## BOARD OF EDUCATION OF BATH COUNTY et al. v. HOGGE.

Court of Appeals of Kentucky.

May 8, 1951.

Roger A. Bryon, J. M. Richardson, Owingsville, for appellants.

J. A. Richards, Owingsville, E. M. Hogge and Lester Hogge, Morehead, for appellee.

CULLEN, Commissioner.

The Bath County Board of Education, the individual members of the board, the superintendent of schools of Bath County, and one Dryden Colliver, are appealing from a judgment of the Bath Circuit Court granting to Glenmore Hogge a mandatory injunction requiring the board to employ Hogge as principal of the Owingsville Consolidated and High School for the 1950–51 school year at a salary of $3168, and enjoining the board from recognizing, employing, or paying the appellant Colliver as principal of the Owingsville school for the year in question. The judgment also overruled the board's motion to dissolve a temporary injunction that was issued prior to the commencement of the 1950–51 school term.

For several years prior to the 1950–51 school year, Hogge was employed as principal of the Owingsville school, and in 1948 he was given a continuing contract under the Teacher's Tenure Law, KRS 161.720 to 161.810. However, this contract does not mention the Owingsville school, and does not provide that Hogge will always be employed in the capacity of principal.

In May 1950 the then superintendent of schools, Mr. Colonel Hammonds, prepared a list entitled "List of Teachers for the 1950–1951 School Year." At the head of the list, under the word "Principals," were the names of the three men who then were serving as principals of the three consolidated schools of the county. However, in the body of the list, where numbered positions and teacher's names were listed for each of the three schools, the position of principal for each school was left blank, with the result that the list did not identify any principal with any particular school. This list was delivered by Hammonds to the members of the school board, and apparently was in the hands of the members at the May meeting, but no action was taken concerning the list at that meeting.

At a meeting on June 28, 1950, Superintendent Hammonds stated that he was ready to make his recommendations for teachers, but the chairman of the board announced that the board would relieve the superintendent of the responsibility of making recommendations; the superintendent then did not make any further effort concerning the recommendations, and the board took no action.

Hammonds resigned as superintendent on June 30. It appears that his intention to resign previously had been made known to the school board. On July 1, defendant Bradley Sexton became superintendent, and the board met again on July 6. At that meeting the board proceeded to fill the teaching positions, without any specific recommendations by the new superintendent. The evidence is that the new superintendent announced at the meeting that he would recommend whatever action the board decided to take.

At the July 6 meeting the board voted to assign Hogge to the position of principal of the Bethel school, and to reduce his salary from $3168 to $2538. The board further voted to assign Colliver, former principal of the Bethel school, to the position of principal of the Owingsville school, and to raise his salary from $2538 to $3168. This action then was filed by Hogge.

The first contention of the appellant board is that the board had the power and the right, under its contract with Hogge, to transfer him from one position to another, and from one school to another, at any time, whether before or during the school year. Hogge maintains that under KRS 160.380, any change in his position of employment could be made only prior to the commencement of the school year on July 1, and then only upon specific recommendation of the superintendent; that when July 1 arrived without the superintendent having made a specific recommendation and without the board having taken any action, Hogge automatically became entitled to continue in his former position for the ensuing school year.

The continuing contract under which Hogge was employed provides that the services under the contract "are to be performed in such school or schools and/or

in such position and at such place or places as may be designated by the Superintendent of the district and approved by the board," and that "The Teacher may, from year to year, or from time to time, be assigned to other or different positions in the same school or to other and different positions in other and different schools of the district." It thus appears that the board had the contractual right to transfer Hogge from one position to another or from one school to another, "from time to time," which right should prevail unless it contravenes the statutes.

In Williamson v. Cassady, 311 Ky. 666, 224 S.W.2d 934, it was held that a school board had authority, on recommendation of the superintendent, to transfer a teacher from the position of principal in one school to a teaching position in another school. In Ritchie v. Dunn, 297 Ky. 410, 180 S.W.2d 284, we held that the Teachers' Tenure Law did not guarantee to a teacher the right to continue to teach in the same school each year. However, in neither of those cases was the question of the *time* of the transfer raised.

KRS 160.380 provides that "appointments, promotions and transfers" of principals, teachers and other school employes shall be made only upon the recommendation of the superintendent, and that principals, teachers and other school employes may be "appointed" by the board of education for any school year at any time after April 1 next preceding the beginning of the school year. In several cases this Court has held that it is the duty of the superintendent to *nominate* teachers, and the duty of the board to act on the nominations, prior to the beginning of the school year on July 1. Cottongim v. Stewart, 277 Ky. 706, 127 S.W.2d 149; Beckham v. Kimbell, 282 Ky. 648, 139 S.W.2d 747; Duff v. Chaney, 291 Ky. 308, 164 S.W.2d 483. However, in none of those cases was a continuing contract involved.

Under a continuing contract, the teacher has the right to continued employment in the school system of the contracting district, from year to year, until the contract is terminated. There is no question, at the beginning of any school year, of the teacher being "appointed" for the year. It would be a useless gesture for the superintendent to recommend "appointment" of such a teacher, because the teacher has a contractual right to continued employment. The only recommendation that the superintendent might make would be as to the position and the school in which the teacher is to serve. With respect to a teacher in employment under a continuing contract, such a recommendation, if involving a change in position or school, would constitute a recommendation for a "transfer," and not one for "appointment". KRS 160.380 does not contain any direction, or even any suggestion, as to the time at which a transfer must or may be made.

We find nothing in KRS 160.380 to render invalid the contractual provision in this case authorizing transfers to be made "from time to time." No contention is made that the transfer was unfair or unreasonable. We therefore conclude that the board of education had the right, after the commencement of the school year, to transfer Hogge from one position to another, assuming that the transfer was made on recommendation of the superintendent.

Hogge contends that the transfer order made by the board at the July 6 meeting was invalid because it was not made on recommendation of the superintendent. KRS 160.380 authorizes transfers to be made only upon recommendation of the superintendent, but does not prescribe any formalities with respect to the recommendation. The statute contemplates that any action taken by the board must be action of which the superintendent approves at the time it is made. Here, the superintendent stated that he would recommend any action that the board might take with respect to the placing of teachers. There was no difference of opinion between the superintendent and the board; the superintendent agreed in advance to the action taken by the board. We are of the opinion that in these circumstances there was a sufficient compliance with the statutory requirement of recommendation.

There was an agreed stipulation of facts in the lower court, reciting among other

things that the defendant Sexton "is now the duly elected, qualified and acting superintendent of schools of Bath County, Kentucky and became such as of July 1, 1950." Notwithstanding this stipulation, the plaintiff was permitted to file an amended complaint, over the objection of the defendants, alleging that at the time of the July 6 meeting defendant Sexton was not qualified as superintendent because he had not taken the oath of office and had not filed with the board, as required by KRS 160.350, a statement of the Superintendent of Public Instruction that he had been duly issued a certificate of administration and supervision. The allegations of the amended petition were supported by proof taken, and plaintiff now contends that no valid recommendation could have been made by Sexton at the July 6 meeting because he was not then qualified.

█ We are inclined to the opinion that the plaintiff is bound by the stipulation as to the qualifications of Sexton, in the absence of a showing of fraud or mistake in entering into the stipulation.

█ We having held that the board of education had the right at any time during the school year, upon recommendation of the superintendent, to transfer Hogge from one position to another, or from one school to another, and that the board's action on July 6 was valid in that respect, the question remains as to whether the board's action in reducing Hogge's salary was valid.

The continuing contract provides that upon a transfer of the teacher to a different position or to a different school, "the salary of the Teacher may be increased or decreased, in accordance with changes in the kinds of duties provided for in the legal teachers' salary schedule of the Board." The board places its reliance on the contract, but on this point it appears that the contract must yield to the statutes.

█ KRS 161.760 provides that each board of education shall give notice annually, not later than August 1, to each teacher who holds a contract valid for the succeeding school year, stating its best estimate as to the salary to be paid the teacher during such year, and that such salary "shall not be lower than the salary paid during the preceeding school year unless such reduction be a part of a uniform plan affecting the entire district." There is no contention in this case that the reduction was part of a uniform plan affecting the entire district, so the board comes face to face with the statutory prohibition against reduction of salary. In Williamson v. Cassady, 311 Ky. 666, 224 S.W.2d 934, the other members of the Court concurred with Judge Rees in the opinion that, while a a principal holding a continuing contract could be transferred to a teaching position in another school, his salary could not be reduced. We abide by that opinion.

Some emphasis is placed by the appellant board of education upon the fact that Hogge's continuing contract was suspended on March 21, 1950, and was not reinstated prior to the July 6 meeting. It appears that in January 1950 the board entered an order discontinuing the Bethel High School, on advice from the State Board of Education that the school would not be accredited for the next school year. In March, the board ordered Hogge's contract suspended, as of the end of the 1949–50 school year, by reason of the discontinuance of the Bethel school, apparently on the basis that Hogge had less seniority than the other two principals in the school system. In May, an order was entered by the board rescinding the January order discontinuing the Bethel school. At the meeting on June 28, the outgoing superintendent recommended that Hogge's contract be reinstated, but the motion of one member of the board, for reinstatement, failed for lack of a second. The record does not show any later action of the board formally reinstating the contract, although the action of the board at the July 6 meeting seems to have been on the assumption that Hogge was entitled to be employed in some position.

█ In view of our holding that the board had the right to transfer Hogge from one position to another, the matter of the suspension has importance only as it could affect the board's obligation to continue to pay Hogge the same salary. In view of the fact that the reason for the suspension of Hogge's contract ceased to exist

464

when the order discontinuing the Bethel High School was rescinded, and that the board of education thereafter had a position in its school system for which Hogge was qualified and to which the board assigned him, we do not feel that the board can predicate any right to reduce Hogge's salary upon the mere absence of a formal order reinstating his contract.

It is our conclusion that the trial court erred in granting a permanent injunction, and in refusing to dissolve the temporary injunction, to the extent that the permanent and temporary injunctions enjoined the dededefendant board of education from transferring Hogge from the position of principal of the Owingsville school to that of principal of the Bethel School, and from employing the defendant Colliver as principal of the Owingsville school and paying him the salary for that position. However, the injunctions properly enjoined the board from reducing Hogge's salary below $3168.

The judgment is reversed, except in so far as it enjoins the board of education from paying the plaintiff a salary less than $3168.