Leslie DAUSE et al., Plaintiffs,

v.

R. Brooks BATES, Individually and as Superintendent of the Russell County Board of Education, et al., Defendants.

Civ. A. No. 6856.

United States District Court,
W. D. Kentucky,
Louisville Division.

May 24, 1973.

140

Brooks, Sullivan & Molloy, Arthur L. Brooks and Patrick H. Molloy, Lexington, Ky., for plaintiffs.

Ben B. Fowler, Frankfort, Ky., Robert L. Wilson, Jamestown, Ky., Hollis E. Edmonds, Russell Springs, Ky., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND OPINION

ALLEN, District Judge.

This action is submitted to the Court for a decision following a bench trial of one and one-half days. It was originally brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343. By amendments to the pleadings, the plaintiffs have

sought also to have the Court determine whether or not their claims are cognizable under the theory of pendent jurisdiction. There were originally eight plaintiffs, but since the filing of the suit, Maxine Garner has been dismissed. The remaining seven comprise three former principals in the Russell County School System, who were all tenured teachers, and who are Leslie Dause, Aubrey Johnson and Robert Garner. The remaining four plaintiffs were teachers employed by the Russell County Board of Education on a limited contract status throughout the 1969–70 school year.

The defendant, R. Brooks Bates, was appointed to be Superintendent of the Russell County Board of Education for the school year 1969–70 and exercised his authority in such position throughout that school year.

The defendants, Clifton Grider, Farris Hall, Buel Stephens and Osburn Roy were members of the Russell County Board of Education during the school year 1969–70. Charles Peck was also a member of the School Board during the same year but he was dismissed from the action on motion of the plaintiffs.

The thrust of the original complaint is to the effect that the plaintiffs were notified by Bates that the members of the Russell County Board of Education, hereinafter referred to as the Board, had removed Dause, Johnson and Robert Garner from their positions as principals and demoted them to the positions of classroom teachers for the 1970–71 school year, in violation of their rights under the 1st and 14th Amendments, in that they were punished for the exercise of their right of free expression and for free assembly and association; and more specifically, for giving written and spoken support to the members of the Kentucky Education Association and the Russell County Education Association. With regards to the four non-tenured teacher plaintiffs, the thrust is that the defendants refused to renew their teaching contracts for the school year 1970–71 in violation of their 1st and 14th Amendment rights, because of the desire to punish them for their participation as members of the Kentucky Education Association, hereinafter referred to as K.E.A. and the Russell County Education Association, hereinafter referred to as R.C.E.A.; and for their giving written and spoken support to the policies of said bodies.

By amended pleadings, the plaintiffs have alleged, in essence, that their respective demotions and terminations were arbitrary and capricious and, therefore, in violation of applicable Kentucky law. Also, with respect to Kelly Burton, it was asserted that he was given a written tenured contract and, therefore, denied due process in that it was alleged that he was not afforded a hearing as to the reasons for his termination.

Appropriate denials were made by the defendants and they contend vigorously that this Court has no jurisdiction over the state claims, and also that Kelly Burton was at no time a tenured teacher.

The evidence indicates that plaintiff Leslie Dause was principal of the Russell Springs Elementary School during the year 1969–70. He had been principal of that school ever since 1952. There were no complaints about his conduct of the school in the personnel records. Mr. Dause was a member of both the K.E.A. and R.C.E.A. Those organizations, and particularly K.E.A., were very active in the state General Assembly of Kentucky during its 1970 term which began in January of that year, in the hope of inducing the General Assembly to enact increases in certain taxes and in turn effect increases in teachers' salaries.

In February of 1970, the K.E.A. decided to call a walkout of all Kentucky public schools served by its members. The R.C.E.A. met and endorsed this proposal. Dause and all of the other plaintiffs in this action were in favor of the decision made by R.C.E.A. to support the walkout proposal. The meeting of R.C.E.A. which endorsed this proposal

was held on the 18th day of February, 1970.

Following the decision of the R.C.E.A. to follow the lead of K.E.A., a walkout of teachers from the Russell County School System took place on February 23rd and lasted for six days. None of the three plaintiffs who were school principals took part in the walkout. Dause and defendant Bates met on February 20th and discussed the School Board's position with respect to the strike. It should be stated here that the School Board had previously gone on record that it was opposed to the strike.

Dause received a written notice on April 27, 1970 from the School Board that he would not be employed as principal of Russell Springs Elementary School for the school year 1970–71. A subsequent letter dated April 30, 1970 signed by Bates in his capacity as Superintendent stated that Dause was being assigned as a classroom teacher for the school year 1970–71, and that the reasons for the reduction of responsibility and salary were as follows:

"1. The board and I feel your removal as principal of Russell Springs Elementary School will improve communications between the Central Office and Russell Springs School.

2. Your cooperation with the Superintendents' (sic) Office has been less than desired.

3. The board and I feel your removal as principal of Russell Springs Elementary School will give an opportunity for new and improved leadership for the school.

4. I feel with your qualifications and experience you can make a contribution to the Russell County School System as a classroom teacher."

It should be noted that on the same date that Bates sent the second letter to Dause, he also sent letters to plaintiffs Johnson and Garner with the same verbiage except for the name of the respective schools of which these two men

were principals. Dause was replaced by Mr. Herbert Wheat who had taught at Valley High School and was in the Central Office of the Russell County School System during the year 1969–70. He had acted as Acting Principal at Salem because of a heart attack of the principal there, Mr. Wilson.

When asked about any specific lack of communications between himself and Dause, or lack of cooperation, Bates was unable to pinpoint any specific incident. He did complain that Dause had been guilty of maintaining poor discipline in the elementary school, but he did not name any specific persons who complained to him about the lack of discipline. He could not recall whether he had ever mentioned to Dause any complaint of his own about lack of discipline, and Dause specifically denies that any such conversation was had.

Dause's salary as principal for the 1969–70 school year had been $9,800. His salary was reduced to $7,750 in 1970–71, and his testimony indicated that the difference between his salary as a classroom teacher and a principal during the years that have ensued since the filing of this suit would amount to approximately $7,500. He also testified and the Court finds that the extra burden of transportation costs imposed upon him by removing him to a school some 11 or 12 miles from his home would have amounted to approximately $675 for the three and one-half years in question.

It was shown by testimony of both Dause and Bates that Bates had knowledge of Dause's support of the walkout, and that Bates sent an employee from the Board's office to assist Dause during the walkout. The same procedure was followed by Bates with reference to the other two principals.

Aubrey Johnson was principal of Jamestown from 1966 to 1970 and had been in the Russell County School System since 1955. He was President of the R.C.E.A. for the year 1969–70 and a delegate to the K.E.A. meeting. He had endorsed the walkout policy of K.E.A.

At a Board meeting he asked the Board to go along with the work stoppage proposal but the Board took no action, and instead passed its Resolution 132 opposing the walkout. The work stoppage discussion took place on February 12, 1970 and Resolution 132 was apparently passed on February 16th and entered on the books February 20, 1970.

In early March, 1970, Johnson received a notice that he would not be employed as principal for the school year 1970–71 and on April 27th he received a letter containing the identical language as the first letter to Dause from the Board. Likewise, on April 30, 1970, he received the letter in identical language of that sent Dause and Robert Garner setting out the reasons for his demotion. Johnson wrote Bates asking for reconsideration and received no answer to his letter.

Johnson was transferred to Salem School as a 7th grade teacher and his wife, who was also a teacher, was transferred to Union Chapel. Salem School is some 11.2 miles from Jamestown where the Johnsons lived and Union Chapel is some 10 to 11 miles in the other direction from Jamestown. The Johnsons felt compelled to purchase another automobile so that they could carry out their teaching assignments.

Johnson and Bates both testified that there were no complaints made by the latter about the former's conduct of his duties as principal prior to the notice of March, 1970. Again Bates, in his testimony, spoke in generalities about the lack of cooperation and communications, but was unable to put his finger on any specific examples other than a reluctance to go along with his luncheon program. He did complain that Johnson was not innovative and made the same complaints about Dause and Garner, but only at the time of his giving his testimony.

Johnson, since his demotion, has been employed as a field man by K.E.A. and receives at least $13,000 and may, in the immediate future, receive a raise to $14,000 per year. He stated that he would like to return to the Russell County School System, and that he sought employment with other systems but did not receive it. Bates replaced Johnson with Mr. Barnes who was a worker in the office of the Board, and who had not joined the R.C.E.A. On his discovery deposition, Bates stated that he was not aware of Barnes' teaching qualifications when he replaced Johnson with Barnes, but that Barnes had the same philosophies of education as he did.

Johnson alleged that Bates would hardly speak to him after the strike, but that he had been cordial prior thereto, an accusation which Bates denied. There was testimony that Bates had talked with Johnson about sending him to another school as principal early in August, 1969, but that this transfer did not materialize.

Robert Garner was principal of Union Chapel Elementary School from 1960 to 1970. He had been in the school system since 1951 and had received no complaints from Bates about his work prior to the work stoppage. He testified that Bates, prior to the opening of the school year 1969–70, attempted to place him as a principal of a new school but that this change was not made because it was against Garner's will and not in conformity with the rulings and regulations of the Board and applicable statutes.

It was shown by Garner's testimony that as a result of his demotion he has earned $5,130 less than he would have had he been retained as a principal between the years of his initial demotion and the trial date. His demotion was to a 7th grade class located at Jamestown, and his additional transportation amounted to 18 miles per day which, computed at 8 cents per mile, would cost him some $818. for the years in question. He was replaced by Mr. Roy who came from Hardin County and had been employed there as a guidance counselor.

Robert Garner held no major office in the R.C.E.A. and apparently was not too active, although he supported its policies, since he testified that he might

have been on a committee. He, as had Johnson, asked for reconsideration of his demotion by letter. Insofar as the charges of the lack of communication by the Board are concerned, he stated he didn't try to communicate and that no effort was made to have him communicate, and no complaints were made about his lack of communication.

Plaintiff Brenda Holt was a non-tenured teacher who had taught special education in Russell County for the years 1968 through 1970. Her contract was terminated in 1970 and the reason given her for the termination was that she had not gone to school for further training during the summer. She apparently wanted to teach regular classes, but Bates wished her to teach retarded children and had hired her for this purpose in the expectation that she would take future courses at college during the summer in order to give her all of the educational qualifications she needed for such a position.

With reference to the 1st Amendment question, she testified that Bates asked her on February 22 "are you going to be on duty during the walkout?" When she stated she would not be on duty, she alleges he said "I hope you know what you are getting yourself into." Bates denies recollection of any such conversation.

Mrs. Holt now teaches in Pulaski County and the salaries which she has received in the years since she left the Russell County School System are in excess of what she received while she was there.

Plaintiff William Wilmoth, a non-tenured teacher of biology and physical education in the Russell County School System, had taught for the years 19___ through 1970. He was told that he was terminated because he was incompetent as a coach because he contacted another school system. He was associated with R.C.E.A. and voted for the work stoppage, and stayed out of school during it. His salaries for the last for years are $6,200, $6,600, $7,319 and $7,728, and he now works for the Hardin County Board of Education.

The evidence relevant to Wilmoth convinces the Court that he was terminated because of his incompetence as a coach, specific examples being cited of his lack of devotion to his employment.

Plaintiff Ernest Brock lives in Russell Springs, Kentucky. He had been in the Russell County School System for four years, 1966–70, as a teacher. His employment was terminated in the spring of 1970 with no reasons given. He had been active in the R.C.E.A. and had made statements which were put on tape to explain to the public the position of that organization as to the work stoppage. He also participated in a question and answer session at the local radio station to explain the Association's position. He had been elected President of the R.C.E.A. for the year 1970–71. Since 1970, he has been employed by the Campbell County School System. His salary in the Campbell County School position in the first year of employment was $2,000 more than what he had received the previous year in Russell County. He also has been employed as a bus driver in Campbell County and receives $1,200 a year salary in that capacity.

Plaintiff Kelly Burton worked for the Russell County School System during the year 1969–70 and received a salary of $6,100 as a teacher. He had not worked the necessary number of years to attain tenure as a matter of right, but received a tenure contract in August or September, 1969 from the Board. He signed the contract and received back an executed copy, the original having had no signatures on it when he received it. It appears from the testimony of Bates that the contract had been sent to Burton by mistake, since Burton was not entitled to a written contract. He testified that he notified Burton that the contract had been sent in error.

Burton received oral notice on April 27, 1970, that he would not be rehired by the Board for the next school year. No reason was given him at that time,

but in July, 1970 he went before the Board and was told that the reason for his termination was the relationship between himself and a girl student. He explained to the Board that the child was from a very poor family and that he and his wife had befriended her. He alleges that he was also told that the reason for his not being rehired was due to his having joined in the instant law suit.

Burton, since 1970, has been employed as a teacher in the Wayne County School System where his first salary was $6,330. He has to commute 106 round trip miles each day to teach school in Monticello, since his wife works in Russell Springs.

He had attended the meetings of the R.C.E.A. and voted for the walkout but did not leave the classroom during the work stoppage. He stated that Bates told him that he was doing the right thing by staying in school, and that upon his reply that he supported the walkout, Bates walked away. He stated that there was some dispute with Bates over discipline on one occasion.

The depositions of the individual defendants regarding their actions as members of the Board reveal that, as to the three plaintiff principals, Bates gave no specific examples of lack of cooperation and communications between him and the plaintiffs, other than to say that he was younger than they and that they apparently resented him. With regards to the other four plaintiffs, it was established at the Board meeting, when it was decided not to rehire them, the incompetency of Wilmoth, the alleged charge against Burton being too familiar with a girl in his class, and the fact that Mrs. Holt would not agree to take a course in summer school in order to qualify for the teaching of retarded children. According to the individual defendant Board members, they had no knowledge of Mrs. Holt's or Mr. Burton's connection with the walkout. They did know that Aubrey Johnson supported the K.E.A. and that he had come before the Board seeking recognition for

the R.C.E.A., and asking for amnesty in the event of a strike.

One of the Board members, Clifton Grider, stated that he had been elected in 1968, took office in January, 1969, and that he, in order to secure election, had voted to transfer Mr. Garner out of the school district in which he and Garner resided. Grider testified (pages 196, 165 of his deposition) that he was upset about the tapes made by Brock because he thought that they misrepresented the Board's position.

Before reaching the Court's ultimate conclusions, a discussion is in order as to certain threshold matters raised by the defendants. First, the question of pendent jurisdiction must be resolved. As both parties have pointed out, the leading case is United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In that case, the Supreme Court points out the following guiding rules:

1. "The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole."

2. "[i]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."

3. "Finally, there may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial."

4. "That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants . . .."

■ Applying these principles to this case, the Court is of the opinion that pendent jurisdiction should be assumed for the reason that the state and federal claims derived from a common nucleus of operative fact, and each of the plaintiffs' claims are such that they would ordinarily be expected to try them in one judicial proceeding. Secondly, these cases have been pending for three years, and considerations of judicial economy and fairness dictate that they be resolved at this time and not tried piecemeal by federal and state courts. Thirdly, there is no likelihood of jury confusion or reasons for separating the claims under Federal Rules of Civil Procedure 42(b). Finally, in the case of Johnson v. Branch, 364 F.2d 177 (4th Cir. 1966), the courts exercised jurisdiction over a plaintiff's complaint seeking reversal of an action of the school committee which refused to renew her contract of employment as a teacher. She contended that the committee acted either arbitrarily or capriciously or acted to penalize her for exercising her constitutional rights. While the defendant apparently did not challenge the jurisdiction of the District Court, the Appellate Court held that it acted either arbitrarily or capriciously or acted to penalize her for her civil rights activity.

■ Next, we come to the question of whether or not this Court has jurisdiction to determine if Kelly Burton had tenure so that his 14th Amendment claim may be recognized by this Court. Defendants contend vigorously that the District Court does not have jurisdiction to determine the tenure question, and that this is a question of state law. Defendants' contentions are met head on by the Supreme Court's decisions in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), where in both cases the federal courts looked into the question of tenure under state law to determine whether or not the respective plaintiffs were entitled to assert their 14th Amendment claims in federal court. While the decisions reached opposite results as to the question of tenure, both are authority for holding that this Court has the duty to determine in this case whether or not Kelly Burton had tenure under Kentucky law.

■■ The defendants raise a third question to the effect that since the minutes of the Board state the reasons for the demotion of the three plaintiff principals, such matters are conclusive and binding on this Court, and are the only matters which may be reviewed. Again, this proposition is mistaken. In Cook County College Teachers Union, Local 1600, A.F.T. v. Byrd, 456 F.2d 882 (7th Cir. 1972), it is held that a justifiable ground of discharge is not a defense when the ground is a mere pretext and not the moving cause of the discharge. Obviously, a nonretention decision based upon activity which is not constitutionally protected is a valid decision, but a decision based in part on protected activity is not a valid decision.

The minutes of the Board reflect the official action taken with respect to the demotion of the three principals, and the decision not to rehire the four non-principal plaintiffs. They do not reflect the discussions of the Board, if any, which preceded this action, nor do they reflect upon the motivation of the Board members and the Superintendent who recommended the action taken by the Board.

In Fluker v. Alabama State Board of Education, 441 F.2d 201 at page 209 (5th Cir. 1971), the following language is pertinent:

"When the violation of substantive constitutional rights has been charged,

however, to the extent that the absence of factual support for the stated reasons for the University's action tends to prove that some other constitutionally impermissible reason underlies the action, the courts should examine the *credibility of the University's stated reasons*." Citing Johnson v. Branch, supra. (Emphasis added).

Thus, if plaintiffs can demonstrate that there was no factual basis for the Board's action, this would tend to prove that other constitutionally impermissible reasons underly the Board's action; on the other hand, even if the facts do support the stated reason for the Board's action, plaintiffs would still not be precluded from demonstrating that constitutionally impermissible purposes were also involved.

■ The Court rejects also the defendants' contention that because the walkout was held to be illegal by the Kentucky Court of Appeals, defendants had a right to discharge or demote plaintiffs because they supported the walkout. The leading case on the subject is Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), where it was held that a teacher may not be discharged because of his criticism of the school board's allocation of school board funds between educational and athletic programs, and of the board and superintendent's methods of informing or preventing the informing of the district taxpayers of the real reasons why additional tax revenues were being sought for the schools. This holding was made despite the fact that the statements of the teacher were public in nature, contained in a letter to a newspaper and factually false.

The Supreme Court pointed out on page 568 that teachers may not be constitutionally compelled to relinquish their 1st Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public schools in which they work. In previ-

ous cases such as Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); and Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952), the Supreme Court has jealously protected the 1st Amendment rights of teachers to speak out on matters of public importance. This Court is of the firm opinion that the support by a teacher of a strike which has subsequently been declared civilly illegal is not such conduct as warrants the right of a school board to dismiss him or demote him. In this regard, see particularly Keyishian v. Board of Regents, supra, 385 U.S. at pages 605 and 606, 87 S.Ct. 675.

The Court's attention has been called to footnote 3 at page 570 of 391 U.S., at page 1735 of 88 S.Ct. of Pickering v. Board of Education, supra, but this lends no comfort to defendants since plaintiffs, in this case, were not concerned with public criticism of their superiors but were advocating a strike in order to further their economic cause.

*Keyishian,* when read closely, cites the fact that teachers are free to indulge their 1st Amendment rights, even to the point of advocating conduct which might prove to be civilly illegal, as long as such conduct is not in connection with subversion or violence, or is criminal in nature.

■ Coming now to the merits of the case, the Court concludes, as to plaintiffs Leslie Dause, Aubrey Johnson and Robert Garner, the action taken by the defendants was in retaliation for their activities in the R.C.E.A. and in espousing the cause of the walkout and professional negotiations. As the courts have pointed out, where there are no previous complaints in the personnel records of teachers, and where the reasons given for their demotion or termination are not fortified by specific proof of any professional failings or misconduct; and where the plaintiffs have been involved

in speech or association with a cause which is not popular with the School Board; and where identical reasons are given for the demotions of these three men; and where substantially the same action is taken with reference to their teaching assignments, then the inference is very strong that the reasons given by the Board for their demotion were not the real reasons, and that the actual reason was to retaliate and make examples of the three principals who supported the walkout. See Hanover Township Fed. of Teachers v. Hanover Community School Corporation, 318 F.Supp. 757 (D.C.N.D.Ind.1970), aff'd. in 457 F.2d 456 (7 Cir. 1972).

The Court further finds as to Dause, Johnson and Garner, under the doctrine of pendent jurisdiction and under applicable Kentucky authorities, that the defendants acted arbitrarily and capriciously in demoting these three men. In the case of Snapp v. Deskins, 450 S.W. 2d 246 (Kentucky 1970), the Court of Appeals pointed out that arbitrary means " . . . contrary to democratic ideals, customs and maxims; essentially unjust and unequal; exceeding the reasonable and legitimate interests of the public; not in accord with reason."

■ In the instant case, there is no sound and specific reason offered for the demotion of Dause, Johnson and Garner. As pointed out in Osborne v. Bullitt County Board of Education, 415 S.W.2d 607 (Kentucky 1967), a charge that a teacher has failed to cooperate with his superiors without designating specific events is merely a subjective charge. Such subjective charges are entitled to little, if any, weight by this Court.

■ The Court finds that as to Mrs. Brenda Holt and William Wilmoth, their discharges arose for reasons unrelated to their support of the strike. It is undisputed that approximately one-half of the teachers in the Russell County School System were on strike, and that there were approximately 135 such teachers in all. The Court is not persuaded by the evidence that the Board singled out Mrs. Holt and Wilmoth for retaliatory purposes or because they supported the strike, since there is no indication that they were teachers of prominence or were in any way ring leaders in the support of the strike. Wilmoth was shown by the evidence to have been an incompetent coach and sufficient reasons existed for his not being re-employed. Likewise, Mrs. Holt was shown to have disregarded the desire of the Superintendent to have her take additional courses in order that she might teach retarded children within the school system.

■ The situation is different, however, with respect to Ernest Brock who was shown to have gone on the radio in order to broadcast the views of the R.C. E.A. and K.E.A. about the strike. These views, as Mr. Bates admitted in his deposition, were unpopular with the Board and the only reason cited by Bates for recommending that Brock not be re-employed was an asserted lack of discipline. Nothing was shown in the personnel files of Brock to indicate such a lack of discipline on his part, and he denies that any complaint was made to him by Bates on this subject. It appears to the Court that Brock was singled out, along with the three high school principals, for punishment in return for their involvement with the walkout, and that such conduct is, of course, constitutionally impermissible. See Pickering v. Board of Education, supra, and Keyishian v. Board of Regents, supra.

■ Kelly Burton presents more complexities since he contends that he was entitled to be treated as a tenured teacher and given written reasons for his dismissal. K.R.S. 161.740(1)(a) and (b) does not support Burton's claim that he is a tenured teacher, since tenure must be based on at least four years of continuous teaching experience within the school district, and Burton had only a total of three years. It is stated in Gullett v. Sparks, 444 S.W.2d 901 (Kentuc-

ky 1969) as follows: Contracts granted under K.R.S. 161. are not contracts in the real sense of the word but are legislative grants. While this statement may be overly broad, it would seem that in order for Burton to have had a valid tenured contract, he must have possessed all the qualifications contained in the statute, and the mistake of the Board in sending him such a contract could not constitute a waiver of their right to insist upon those qualifications. Put in other words, waiver situations are not analogous, and Burton was not a tenured teacher.

 However, Burton was not re-employed because of his alleged association with a female student. Even though it is held that Burton was a non-tenured teacher at the time that he was not re-employed, a question arises as to whether, in light of the reason given for his termination, he should have been afforded a due process type of hearing. In Board of Regents v. Roth, supra, at page 573 of 408 U.S., at page 2707 of 92 S.Ct. the Supreme Court said this:

"[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."

The Court specifically stated in *Roth* that the state, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in the community, nor did it base the non-renewal on a charge that he had been guilty of dishonesty or immorality.

Burton was given no written reasons for his termination and no hearing as to the reasons for his dismissal were afforded him. True, Burton did come to a July meeting of the School Board, but the proceedings there consisted mainly of a statement made by Burton to the Board denying any improper association with the female student. There was no hearing held with the right given to

Burton to have written notice of the charges against him, and to call witnesses on his behalf and to cross-examine witnesses who might be produced by the Board.

The recitation of these facts suffices to show that Burton's due process rights were deprived in view of the charge of improper conduct with the female student.

As to Burton's 1st Amendment claims, the weight of evidence is to the effect that he was not discharged because of his advocacy of the strike but rather because of the rumors of his association with the female student.

As with Mrs. Holt and Wilmoth, Burton was not in a high position in the Russell County School System and no particular reason was shown why Bates would discipline him for his advocacy of the strike and not discipline other teachers similarly situated. It is true that there was testimony that Burton told Bates he supported the school walkout and that Bates walked away without any further comment, although Bates does not recall the incident. It is noted, however, that Burton did stay in the school during the walkout.

The Court concludes that a due process hearing should have been afforded Burton and that if he so desires such a hearing, it be afforded him within 15 days after entry of these findings of fact and conclusions of law, with the Board to make appropriate findings as to its action.

 Coming next to the question of equitable relief to be afforded the plaintiffs, defendants have contended that this Court has no power to award same in light of the Sixth Circuit's decision in Deane Hill Country Club, Inc. v. City of Knoxville, 379 F.2d 321 (1967), and its reliance upon footnote 50 in the case of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). However, it seems from the reading of other Sixth Circuit decisions that the Court was careful to confine its holding to cities and townships, since the Sixth Circuit

affirmed the case of Rolfe v. County Board of Education of Lincoln County, Tennessee, 391 F.2d 77 (1968). Likewise, the Supreme Court in the case of Tinker v. Des Moines School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) upheld the judgment of the District Court directing equitable relief against the school district. Therefore, this Court holds that reinstatement is to be awarded to the three high school principals and to Ernest Brock, provided that they notify the defendant School Board on or before June 15, 1973, of their intention to be reinstated. Said reinstatement shall include the right to be reinstated at the salary which their previous positions would have carried prior to demotion, augmented by raises given since 1970.

With respect to damages, the Court finds that plaintiff Dause is entitled to damages in the sum of $7,500 for loss of salary incurred during the past three years and to $675 for transportation expenses incurred as a result of his transfer to an elementary school which necessitated additional transportation over and beyond that which he would have incurred had he remained in his then position. See McBeth v. Board of Education of the DeVall's Bluff School District, 300 F.Supp. 1270 (D.C.E.D.Ark.1969).

Plaintiff Robert Garner is entitled to recover damages in the amount of $5,130, representing loss of salary over the past three years incurred as a result of his demotion. He introduced proof that he expended $818 for his additional transportation expenses incurred during the past three years. Therefore, he is awarded a total of $5,948.

Plaintiffs Brock and Johnson are not entitled to any damages in view of the fact that their salaries have been in excess of what they would have earned had they not been respectively demoted or terminated.

It is contended by plaintiffs' counsel that they should be awarded punitive damages. The case of McArthur v. Pennington, 253 F.Supp. 420 (D.C.E.D.Tenn.1963), cited by the plaintiffs, is not applicable since, in that case, plaintiffs were held in jail without any justification therefor. It is not shown here that defendants' actions were motivated by an evil intent or by malice toward the individual plaintiffs. The Court does not believe that punitive damages would be appropriate under these circumstances. See the case of Lucia v. Duggan, 303 F.Supp. 112 (D.C.D.Mass. 1969), and Restatement of the Law, Torts 2nd Section 46.

Plaintiffs Dause, Johnson, Garner and Brock are awarded their costs herein expended as against the individual defendants R. Brooks Bates, Clifton Grider, Farris Hall, Buel Stephens and Osburn Roy. The individual defendants Bates, Grider, Hall, Stephens and Roy are awarded their costs herein expended as against plaintiffs Mrs. Brenda Holt and William Wilmoth. All allocation of costs as to plaintiff Kelly Burton is hereby reserved.

A judgment in accordance with these findings of fact, conclusions of law and opinion will be entered herewith.

## JUDGMENT

The Court having entered its findings of fact, conclusions of law and opinion following a bench trial,

It is hereby ordered and adjudged as follows:

1. Plaintiff Robert Garner is entitled to recover from the individual defendants, R. Brooks Bates, Clifton Grider, Farris Hall, Buel Stephens and Osburn Roy, jointly and severally, the amount of $5,948, with interest at 6% per annum from date of judgment until paid.

2. Plaintiff Leslie Dause is entitled to recover from the individual defendants, R. Brooks Bates, Clifton Grider, Farris Hall, Buel Stephens and Osburn Roy, jointly and severally, the amount of $8,175, with interest at 6% per annum from date of judgment until paid.

3. Plaintiffs Leslie Dause, Aubrey Johnson, Robert Garner and Ernest Brock are entitled to be reinstated to the positions formerly held by them in the Russell County School System, the rate of pay being the equivalent of what they would have received had they remained in the School System in the positions held by them in 1970, with any increases in pay accruing to said positions since then. Said plaintiffs must exercise their right to be reinstated in writing on or before June 15, 1973, or otherwise they will be deemed to have waived their right to reinstatement.

4. Claims of all plaintiffs for punitive damages and for mental anguish and suffering are hereby dismissed.

5. Plaintiff Kelly Burton is to be accorded a due process hearing by the Russell County Board of Education on or before June 15, 1973, unless he waives in writing said opportunity within one week from date of judgment. The defendant Board shall have the evidence transcribed and furnish this Court with a copy thereof. This cause of action is left open as to Kelly Burton for further proceedings by the Court.

6. The claims of Mrs. Brenda Holt and William Wilmoth against all of the defendants are hereby dismissed with prejudice.

7. Plaintiffs Leslie Dause, Aubrey Johnson, Robert Garner and Ernest Brock are entitled to recover their costs herein expended from the individual defendants, R. Brooks Bates, Clifton Grider, Farris Hall, Buel Stephens and Osburn Roy.

8. The individual defendants, R. Brooks Bates, Clifton Grider, Farris Hall, Buel Stephens and Osburn Roy, are entitled to recover their share of the costs attributable to Mrs. Brenda Holt and William Wilmoth, plaintiffs.

Pursuant to the provisions of Rule 54(b) Federal Rules of Civil Procedure, this judgment shall constitute a final judgment as to all of the claims of the parties herein, with the exception of the claim of Kelly Burton, and

It is further ordered and adjudged that there is no just reason for delay, and the Clerk of this Court is expressly directed to enter judgment.