## Sanitation Dist. No. 1 Of Jefferson County v. City Of Louisville.

June 15, 1948.

As Modified on Denial of Rehearing October 1, 1948.

Franklin P. Hays, Skaggs, Hays & Fahey, Will H. Fulton, Woodward, Dawson, Hobson & Fulton, Arthur W. Grafton and Wyatt & Grafton for appellant.

Gilbert Burnett and John R. Moreman for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

This case is a sequel of Sanitation District No. 1 v. Louisville & Jefferson County Metropolitan Sewer District, 307 Ky. 422, 208 S. W. 2d 751 and of Engle v. Bonnie, 305 Ky. 850, 204 S. W. 2d 963. The latter related to an Act relative to the incorporation of cities. KRS 81.030 et seq. In the former case there was a declaration of powers and rights of the respective parties in relation to a proposed contract between the two sewer districts. The Sanitation District contemplated the construction of a sewer system and issuance of revenue bonds to cover the cost. The proposed contract provided

that it should be connected with the sewer system of Louisville then and now being maintained by the Metropolitan Sewer District. The particular question in this court was whether either the City of Louisville or Metropolitan Sewer District would become responsible for the debts and liabilities of Sanitation District in the event of annexation of the territory by the City, and thereby relieve the users of the local system from the obligation of paying for its construction.

We held the Metropolitan Sewer District Act had impliedly repealed Ky. Rev. Sts. 220.530, which was a part of the Act of 1940 under which the Sanitation District was organized, and that the City upon annexation of the territory would not have to pay the bonds. We also held that Metropolitan District could not be required to assume such obligations although there appears to be no obstacle to its voluntarily doing so. Immediately afterward, a bill was introduced in the Legislature (H. B. 464) re-enacting KRS 220.530 with amendments making it more direct and specific. It was aimed directly at the St. Matthews situation, though general in characterization and specification. The bill was passed with an emergency provision which made it effective in ten days.

The City of Louisville instituted this suit challenging the constitutionality of the Act. The circuit court declared the Act unconstitutional and void "in its attempted application to the pending annexation proceedings by the City of Louisville to annex the territory comprised in Sanitation District No. 1 of Jefferson County because, (1) it attempts to delay and prohibit those proceedings and (2) it would impose the debts and liabilities of the district upon the City."

Section 1, paragraph (1) of the Act is as follows: "Where a city annexes an entire sanitation district organized under this Chapter, the city shall be liable from and after the date of such annexation for all of the debts and liabilities of such district, including, but not by way of limitation, all revenue bonds and all debts and liabilities secured by revenues of the district, and all other bonded and floating debt of the district, and such debts and liabilities shall be payable out of the general funds of the city, and such city shall be the owner of

all the property and rights of the district, and the users of sewers in the district shall be relieved from any further rentals and obligations, except that if the territory in the district becomes part of the territory in a metropolitan sewer district formed under Chapter 76 of the Kentucky Revised Statutes, such users shall pay the regular charges of such metropolitan sewer district, and the sanitation district shall thereupon be automatically dissolved."

Paragraphs (2) and (3) provide that if only a portion of the territory embraced in a sanitation district should be annexed, the city would acquire proportionate rights and assume proportionate obligations.

Section 2 of the Act declares that it shall prevail over any existing law in conflict with it, and section 3 is a severance provision to the effect that if any part of the Act is held to be unconstitutional or invalid, no other part shall be affected by such decision.

The Sanitation District is authorized to levy a tax to raise funds for the expense of organization and preliminary work up to the time the money shall be received from the sale of revenue bonds and to borrow money in anticipation of the collection of the tax. KRS 220.-360, 220.370. This is the extent of its taxing power. To defray the cost of such preliminary expenses and the construction of the sewers, the district may borrow money and issue negotiable bonds "payable solely from the revenue funds derived from the rentals from services rendered by the district to the inhabitants thereof, as provided in KRS 220.510, and shall not constitute an indebtedness of the district within the meaning of the Constitution. It shall be plainly stated on the face of each bond that it has been issued under the provisions of KRS 220.010 to 220.520, and that it does not constitute an indebtedness of the district within the meaning of the Constitution." KRS 220.400. A statutory mortgage lien is imposed upon all property of the sanitation district in favor of the holders of the bonds and coupons to secure their payment, and a lien will exist upon the works of the district and all extensions and appurtenances until the bonds shall have been paid in full. KRS 220.420. The section cited in foregoing quotation, KRS 220.510, authorizes the board of directors of the sani-

tary district to establish and collect rates from the users of the system for the payment of the bonds and the maintenance of the sewers. KRS 220.420 gives to the holders of bonds the right to enforce the liens and to compel the performance of the obligations to collect the revenues for their liquidation. KRS 220.510, as amended by House Bill 463 in the 1948 legislature, Acts 1948, c. 117, likewise authorized the district to require any one furnishing water service to a sewer user's premises to cut off such water service in the event the user failed to pay his sewer service charges.

Sanitation District No. 1 has incurred preliminary expenses of more than $100,000 and has let contracts for the construction of a sewer system. The construction of a disposal plant is contemplated. The estimated total cost of the project is $2,000,000.

The City of Louisville enacted an ordinance on May 28, 1947, annexing territory which is practically coextensive with that embraced by Sanitation District No. 1. A remonstrance against annexation was filed and the case was pending in the Jefferson Circuit Court (KRS 81.100 et seq.) at the time the Act under consideration was passed and is still pending.

The gist and explicit purpose of the Act of 1948 is to impose the payment of the cost of a community public improvement upon the general revenues of the City, if it should be annexed. While the probable intent was that all of it should not be paid in cash at the time of the annexation, the legal effect is the same, for there would be an assumption of the entire debt though actual payment might be made as the coupons and bonds severally mature.

It is stipulated in the record that Louisville does not now have general revenues over and above its necessary governmental expenses sufficient to enable it to assume in one year any part of the debts and liabilities of the Sanitary District in the event of annexation of all or any part of the territory. Nor is it presently contemplated that the City will at any time in the foreseeable future have general revenues sufficient to permit it to assume in any one year the amount of expenditures which would be required to construct and complete the sewerage system of the Sanitary District in accordance

with the contracts which it has made. The assumption of any such debts or obligations would result in the City becoming indebted in an amount exceeding the income and revenue provided for the year within which annexation might take place. This, of course, can not be legally done. As said in Sanitation District No. 1 v. Louisville and Jefferson County Metropolitan Sewer District, supra, 307 Ky. 422, 208 S. W. 2d 751, 754, ''the parties could not contract, or the statute provide, or the courts lawfully adjudge a liability upon the city which is prohibited by Section 157 of the Constitution.'' The financial condition of the City, as shown in the stipulation, would permit the valid issuance of voted tax-payable bonds within the limitations of Section 158 of the Constitution. But it is important to note that the 1948 Act does not authorize or contemplate the issuance of such bonds. It strictly confines the payment of the obligations out of the general funds.

The argument of the Sanitation District is, in brief, that the Act cannot be held constitutionally invalid or inapplicable because annexation is optional; that it is a ''take it or leave it'' proposition, for if the City is unable financially to pay the bill, it must not take in the territory or any part of it. All of that is true except for the inescapable fact that the City really has no choice if the conditions cannot be met in the foreseeable future.

Since the creation of municipalities and all matters in relation to annexation are political acts, whether they shall be done or not is within the power and discretion of the Legislature as the political department of the government; hence the assent or the will of the people particularly affected is not controlling, for they hold their property subject to the exercise of the legislative power. Cheaney v. Hooser, 9 B. Mon. 330, 48 Ky. 330; Carrithers v. City of Shelbyville, 126 Ky. 769, 104 S. W. 744, 17 L. R. A., N. S., 421; Gernert v. City of Louisville, 155 Ky. 589, 159 S. W. 1163, 51 L. R. A., N. S., 363; Allen v. Hollingsworth, 246 Ky. 812, 56 S. W. 2d 530. Of course, in these acts, as in all others, the Legislature is subject to all the curbs and restraints of the Constitution. There is no specific limitation with respect to annexation of territory by a city, but it seems to us that the present Act offends some of the general provisions.

And a municipal corporation, though created by the Legislature, having authority to prosecute and defend suits in the courts, may invoke the protection afforded by the Constitution to prevent a violation of its rights. 2 Cooley, page 397, note.

Section 2 of our Bill of Rights is unique, only the Constitution of Wyoming having a like declaration. Article 1, Section 7, Constitution of Wyoming. Section 2, Kentucky Constitution, reads: "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

This is regarded by an eminent authority as a good definition of constitutional government, as distinguished from a pure democracy. Stimson, Federal and State Constitutions, page 192, section 182, note 2. It is the affirmance of fundamental principles recognized throughout the federal and state constitutions and sanctioned by the laws of all free people. Most of these principles are expressed in the various bills of right, but they are to be found also in the historical development of constitutional government from despotism. So it may be said that whatever is contrary to democratic ideals, customs and maxims is arbitrary. Likewise, whatever is essentially unjust and unequal or exceeds the reasonable and legitimate interests of the people is arbitrary. City of Cambellsburg (Campbellsville) v. Odewalt, Ky., 72 S. W. 314; City of Louisville v. Kuhn, 284 Ky. 684, 145 S. W. 2d 851; Kenton & Campbell Benevolent Burial Association v. Goodpaster, 304 Ky. 233, 200 S. W. 2d 120; Illinois Central R. Co. v. Commonwealth, 305 Ky. 632, 204 S. W. 2d 973; Weaver v. Public Service Commission, 40 Wyo. 462, 278, P. 542. Section 2 of the Constitution is a curb on the legislative as well as on any other public body or public officer in the assertion or attempted exercise of political power. It seems to us that the present Act must be regarded as arbitrary within the contemplation of that section and that it also offends certain specific provisions.

By this Act the Legislature has recognized its own enactments authorizing the annexation of territory by cities of the first class, but has by the Act imposed such oppressive terms or conditions as to deny effectually

the right of the City of Louisville to avail itself of that authorization. It would require the City to do an illegal thing by exceeding its current revenues or assuming an unconstitutional debt.

There is no conceivable reason for the imposition of this burden in case of annexation of the territory of a sanitary district by a city of the first class, except to make annexation so oppressive as to make it prohibitive.

An illustrative and extreme case of arbitrary action in relation to annexation by a city is revealed in Jones v. City of Memphis, 101 Tenn. 188, 47 S. W. 138. Under constitutional power to enact special legislation, the General Assembly provided for the annexation of certain territory to the City of Memphis, but excluded such territory from the benefits of police, fire and light protection for ten years, at the same time exempting that territory from taxation for those purposes. The Act was held unconstitutional for the reason that all parts of a city are entitled to the same protection and advantages and all taxation must be uniform and equal.

The statutes provide that where a city of the first class annexes territory of a smaller city or town it shall be bound for its debts and liabilities, wholly or proportionally. KRS 81.130. And we recognize the law generally to be that even without specific statutes, where one municipality annexes another, or where two cities merge, the debts of each thereby become the debts of the annexing or the combined municipality, and recognize that the Legislature has power to shift tax burdens. But there would be no assumption of a public debt or a shifting of tax burdens in the application of this Act of 1948, except perhaps that incurred in anticipation of the preliminary tax authorized by KRS 220.-370. The very law under which the Sanitation District functions and proposes to pay for its sewers declares that the bonds are not to be regarded as a public debt. The security of the bondholder will be the power and the duty of the District Board of Directors to collect charges from the users of the sewers for a sinking fund and his right to have the courts enforce the contract and his liens. By this Act in case of annexation those obligations are converted or made into a public debt, payable by

general taxation. The Act transmutes into a public debt what would be private obligations but for the legislative sanction. The Act does not shift tax burdens from one section to the entire City, for there will be no tax burden to be shifted. A public debt is ipso facto created by annexation.

Appropriate to our present consideration is the following comment of a distinguished authority, 2 Cooley's Constitutional Limitations, page 1035, note, as follows: "The general idea of our tax system is, that those shall vote the burdens who are to pay them; and it would be intolerable that a central authority should have power, not only to tax localities, for local purposes of a public character, which they did not approve, but also, if it so pleased, to compel them to assume and discharge private claims not equitably chargeable upon them."

Section 3 of the Constitution reads: "No grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public services."

This is the correlative of that part of Section 13 which declares that private property of no man shall be taken or applied to a public use without consent and compensation. It is never competent for the Legislature to dispense public funds to any individual or group of individuals without benefit to the public interest or welfare. Thus, it was held in Barker v. Crum, 177 Ky. 637, 198 S. W. 211, L. R. A. 1918F, 673, that public funds could not be used for the benefit of a few favored boys in each county, selected in accordance with the legislative act, for the payment of their tuition at the University of Kentucky. To sustain the present Act of 1948 would be to recognize constitutional sanction of an act which in effect would relieve private property or its owners from the payment of money for the satisfaction of their bonds issued to cover the cost of their community sewer system.

Moreover, the provision is at war with equality. Under similar conditions the users of other community systems would continue to pay for them by special assessments after annexation to the City of Louisville. The Metropolitan Sewer District has

authority to take over existing sewer and drain-
age systems and facilities serving another city or
other incorporated area located in Jefferson County by
agreement with its governing body. Where it does, the
cost of construction and subsequent maintenance is pay-
able out of sewer charges. KRS 76.170 (1). A sanita-
tion district organized under Chapter 220, KRS (as was
the appellant), alone is excepted from those provisions.
KRS 76.170 (2). The Metropolitan Sewer District has
authority also to construct additions, betterments and
extensions of existing facilities within the corporate
limits of Louisville, subject to the approval of the Board
of Aldermen. KRS 76.080. All of such construction
costs or bonds issued to cover same are payable out of
sewer revenues and they do not become a charge against
the general tax revenue of the City. In sustaining the
validity of the Metropolitan Sewer District statute, we
considered the fact that its obligations do not consti-
tute a public debt within constitutional definitions. Veail
v. Louisville & Jefferson County Metropolitan Sewer
District, 303 Ky. 248, 197 S. W. 2d 413. Thus, this Act
of 1948 has the effect of giving a sanitation district an
extremely favorable and unequal advantage. The un-
constitutionality of the Act would not be more pro-
nounced if the condition were that in case of annexation,
the property of the area should be exempt from city
taxation for a period of ten years, as in the Memphis
case cited above, or that any outstanding street improve-
ment assessment warrants should be paid by the city
out of the general revenues, or that every person resid-
ing in the area should be paid $500 in cash.

It cannot be logically said that if it were otherwise
the city would obtain title to the St. Matthews sewer
system without cost and at the same time the community
would be unequally or inequitably required to pay spe-
cifically for the cost of creating that property and get
nothing in the exchange. Without this condition there
would be an equalization of charges and benefits with
other communities similarly situated, for St. Matthews
would have the right to use the city trunk line sewers,
which have already been paid for, or substantially so,
and save the expense of a disposal plant. Further, the
community would avoid the payment of a differential
in use charges, as approved in Louisville and Jefferson

County Metropolitan Sewer District v. Joseph E. Seagram & Sons, 307 Ky. 413, 211 S. W. 2d 122.

The fact that the property of the annexed territory would be subject to general taxation of the city, which embraces a proportion to pay outstanding city sewer bonds, is not of legal consequence. McQuillen, Municipal Corporations, section 311; Pence v. City of Frankfort, 101 Ky. 534, 41 S. W. 1011, 19 Ky. Law Rep. 721; City of Louisville v. Sullivan, 302 Ky. 86, 193 S. W. 2d 1017.

We are constrained to hold that the Act is unconstitutional. Section 3 declares that if any part should be declared unconstitutional, every other part should remain the law, since the legislative intent was to enact each part separately. However, the decision that the provision which imposes the burden upon the city to satisfy the District's revenue bonds out of general tax funds is void eviscerates the whole Act, and as all other provisions are dependent upon that, it necessarily follows that the entire Act must fail.

This holding does not affect the validity of the bonds issued or to be issued by the Sanitation District nor does it in any way impair the power of the holders of those bonds to enforce their statutory and contractual rights. The Sanitation District will continue to exist as such after annexation and its functions and duties will be in no manner altered. It is so stated in Sanitation District No. 1 v. Louisville and Jefferson County Metropolitan Sewer District, supra, 307 Ky. 422, 208 S. W. 2d 751. The Board of Directors of the Sanitary District will continue to have exclusive jurisdiction and duty to fix and collect sewer charges, and should they fail in such duties, the holders of the bonds may enforce performance by them. So long as the District has debts validly created and outstanding, it cannot dissolve or be dissolved, and, as we now hold its debts will remain the debts of the District. Compare Drane v. Weston, 276 Ky. 810, 125 S. W. 2d 722 relating to the dissolution of St. Matthews as a sixth class town and its obligations. Such part of the Act in question as provides for dissolution upon annexation must likewise be held invalid.

The rights and remedies granted to the holders of such bonds by the statutory provisions heretofore enu-

380

merated in this opinion are similar to rights heretofore approved by this court as proper in a long line of cases.

The judgment of the circuit court is accordingly affirmed.