C. V. SNAPP, Arson Justice, James T. Dotson, et al., Appellants,

v.

Tilden DESKINS, Superintendent of Pike County Schools, et al., etc., Appellees.

Court of Appeals of Kentucky.

Jan. 23, 1970.

Burke & Justice, Pikeville, for individual appellants.

Combs & Anderson, Pikeville, for appellant Kentucky Education Association.

Jean L. Auxier and J. Ervin Sanders, Pikeville, for appellees.

CULLEN, Commissioner.

On July 1, 1969, the Pike County Board of Education, on recommendation of the new superintendent of schools who took office that day, made substantial transfers of the position assignments of administrative or supervisory personnel and school principals. Nine of those who were transferred brought this action against the board members and the superintendent, seeking to enjoin the transfers on the grounds that the transfers (1) were in violation of the statutes, (2) were in violation of a contract between the board and the Pike County Education Association (a teachers' organ-

ization), and (3) were arbitrary and capricious. They were joined by one C. V. Snapp, whose employment as director of the "Follow Through Program" had been terminated and who had been given no new assignment. Subsequently the Kentucky Education Association was permitted to intervene, and it asked for a declaratory judgment holding the transfers to be in breach of the contract with the Pike County Education Association.

The circuit court made a conclusion of law that the transfers did not violate the statutes, but that the failure to give any employment to C. V. Snapp was in violation of statute. The court made no finding or conclusion as to the validity of the contract with the Pike County Education Association or as to whether that contract had been violated, nor any finding or conclusion on the issue of arbitrariness of the transfers. Judgment was entered dismissing the complaint of all of the plaintiffs except Snapp, and dismissing the intervening complaint of the Kentucky Education Association. As to Snapp, the judgment ordered that he be given employment for the 1969–70 school year at a salary not less than that paid to him in the 1968–69 school year.

All of the original plaintiffs, including Snapp, have appealed. The Kentucky Education Association also has appealed.

All of the individual appellants, except Snapp, held continuing contracts under KRS 161.740. Snapp held only a limited contract under KRS 161.750. During the 1968–69 school year five of the appellants had served as school principals; two as directors of administrative programs; one as a "head teacher" of an elementary school; and one as a classroom teacher and head basketball coach of a high school. As previously stated, Snapp had served as director of the federal "Follow Through Program." In the transfers here in dispute, the principals all were assigned to different schools from the ones they had served in; two of them were demoted from high school principal to grade school principal; and one was reassigned from grade school principal to assistant principal of a high school. One of the directors was made an elementary school principal and the other was made a classroom teacher in a high school. The elementary school "head teacher" was given an assignment as an ordinary classroom teacher in a different school. The basketball coach was left in his former school but was no longer assigned as basketball coach.

*None of the transferred appellants was given any reduction of salary by reason of the transfer.*

A statement here of the circumstances of the transfers is essential to an understanding of the issues.

C. H. Farley, who for many years had been superintendent of schools for Pike County, was serving the last year of his contract in the 1968–69 school year. Board members unfavorable to him had been elected and he knew his contract would not be renewed after it terminated on July 1, 1969. In fact the board, in the spring of 1969, already had committed itself to the employment of Tilden Deskins as superintendent.

At a board meeting held on April 28, 1969, Farley submitted his recommendations to the board as to school personnel employments for the 1969–70 school year. The recommendations were that each employe retain the same position as held in 1968–69. The board, at this meeting, approved in full the recommendations as they applied to persons holding positions as *classroom teachers;* however, as to principals and supervisory or administrative personnel the board approved only their continued *employment,* and expressly "deferred placement of these to a later date." From the date of that meeting until Farley left office on June 30 no further action was taken by or recommended to the board with reference to the "deferred placement." However, Farley, on April 29, 1969, wrote a letter to each person in the "deferred placement" group,

stating that each had been "employed" for 1969–70 but:

"* * * at the recommendation of the Superintendent for placement for you, the Board deferred until a later date. Unless you do something that will cause your Superintendent to doubt your integrity as a school leader, my recommendation that you continue in the position which you now hold still stands."

On July 1, 1969, Deskins took office as superintendent. At a meeting of the board held on that day Deskins submitted his recommendations for assignment of the people whose placement had been "deferred." Those recommendations were for the transfers here in issue. The board approved the recommendations, and notice was mailed on July 1 to each affected person, stating what the person's new assignment would be, but giving no reasons for the transfer. The instant lawsuit was filed by the protesting transferees on July 11, 1969.

We shall consider first the contention of the individual appellants that the transfers violated the governing statutes. Of principal significance is KRS 161.760, which reads:

"(1) Each board of education shall cause notice to be given annually not later than July 1 to each teacher who holds a contract valid for the succeeding school year, stating the best estimate as to the salary to be paid such teacher during such year. Such salary shall not be lower than the salary paid during the preceding school year unless such reduction be a part of a uniform plan affecting the entire district, or unless there is a reduction or elimination of extra service, administrative and/or supervisory duties and responsibilities of the teacher or other certified personnel. But nothing herein shall prevent increases of salary after the board's annual notice has been given. All teachers who refuse assignment shall notify the superintendent in writing not later than

July 15. Reassignment of certificated personnel after July 15 shall be made only to fill vacancies created by illness, death or resignations; to reduce or increase personnel because of a shift in school population; to make personnel adjustments after consolidation or merger; to assign personnel according to their major or minor fields of training.

(2) Upon recommendation of the superintendent and approval of the board of education reduction of responsibility for a teacher may be accompanied by a corresponding reduction in salary; provided that written notification setting forth the reason or reasons for such reduction shall be furnished the teacher not later than May 15.

(3) Employment of a teacher, under either a limited or a continuing contract, is employment in the school district only and not in a particular position or school."

The individual appellants, reading this statute with KRS 160.380, which prescribes that all "appointments, promotions and transfers" of school personnel shall be made only on the recommendation of the superintendent subject to the approval of the board, argue that when Farley made his recommendation in April the board had no choice except (1) to approve the recommendations or (2) to appeal to the State Board of Education, and that the board could not *defer* action. In support of this argument the appellants cite cases such as Beckham v. Kimbell, 282 Ky. 648, 139 S.W.2d 747, wherein this court held that a school board could not postpone or defer action on the superintendent's recommendations of teachers *for employment*.

The cases relied upon by the appellants predate the teachers' tenure law. At that time teachers were employed from year to year, and there were compelling reasons for a teacher to be able to know, before the commencement of the new school year, whether he was to be employed for that year. Under the tenure law, however, a

teacher with a continuing contract has no problem of continuing employment, and a teacher with a limited contract is required under KRS 161.750 to be notified before May 15 whether he will be reemployed for the ensuing school year. So a teacher ordinarily will know in ample time whether he is to be reemployed. Of course he wants to know also what his salary will be and what his position assignment will be.

It may be that there are good reasons why a teacher should be informed, before the start of the school year, what his salary will be and what his position assignment will be, and therefore the law should be construed as requiring action by the board on these matters before the start of the new school year, which means that the board would have to act promptly on the superintendent's recommendations. However, the legislature has chosen to deal specifically with the subjects of salary and position assignments, and we find no room for an expanded construction.

As to *salary*, KRS 161.760 says that the teacher must be given not later than July 1 the best estimate as to the salary he will receive for the ensuing year. If a reduction of responsibility is to be accompanied by a reduction in salary, the teacher must be notified not later than May 15 of the reasons for the reduction. So salary-fixing times are specifically limited.

As to position assignments, KRS 161.760 says that employment of a teacher is employment in the district only and not in a particular position. Further, it places limitations on a change of position after July 15. The clear implication of the statute is that a change of position may be made at any time before July 15.

Since the statute states specifically that position assignment is not an element of the teacher's contract, it is plain that transfers of assignments can be made at any time except when expressly limited by the statute. *Even had the board approved Farley's recommendations as to position*

*assignments of the appellants,* they would have had no *contractual* right to the recommended assignments, and they could have been reassigned on Deskin's recommendation, without restrictions, at any time before July 15. Under the cases relied upon by the appellants, prompt action by the board on the superintendent's recommendation of *employment* was essential because otherwise the teacher would have *no contract at all.* But under the present statutes, the teacher has a *contract* of which position assignment is declared specifically not to be an element. Since determination of position assignment is not a requisite of the existence of the contract, the same necessity does not exist for limiting the time for such determination, as existed under the former statutes for limiting the time for *entering into the employment contract,* and as we read the statutes the legislature has not placed any time limit on transfers of positions other than the restrictions on transfers after July 15.

Prior to the enactment of KRS 161.760 in its present form, this court, in Board of Education of Bath County v. Hogge, Ky., 239 S.W.2d 459, pointed out that the statutes did "not contain any direction, or even any suggestion, as to the time at which a transfer must or may be made," and the court held specifically that a principal's position assignment could be changed after the start of the new school year. We find nothing in the present statute to require a departure from that holding, except as to the restrictions on transfers after July 15.

■ It is our conclusion that the determination of the position assignments of the individual appellants in the instant case did not violate any statutory proscription as to time.

This brings us to the argument that the transfers of assignments violated the contract between the board and the Pike County Education Association.

There may be a question whether a school board has authority to enter into a personnel contract with a teachers' organization, or whether provisions of the particular contract here in question are invalid as being in conflict with statutes governing teachers' employment, but we do not reach those questions because it is our conclusion that in any event the contract was not violated, at least not in such a way as to invalidate the transfers.

One provision of the contract, claimed to have been violated, is:

"Teachers shall be notified of their tentative program schedule or grade level assignment for the ensuing year prior to May 1 of the current school year. Teachers shall be notified of any changes made in the tentative program schedule or grade level assignment for the ensuing year including the schools to which they will be assigned, by July 1, of the same year." [1]

It will be remembered that Farley wrote the appellants, on April 29, that "my recommendation that you continue in the position which you now hold still stands." We think this was a sufficient notice of "tentative" assignment under the contract. It further will be remembered that on July 1 Deskins wrote to each appellant informing him of his ultimate assignment. This clearly complied with the contract.

Another provision of the contract, claimed to have been violated, is:

"If a teacher is transferred from the school where he or she has taught for a time to another school, less conveniently located for the teacher, facts must be presented as to the cause of the transfer but the Superintendent has final say."

Facts as to the causes of the transfers were not presented to the appellants. However, this contract does not indicate that the presenting of such facts is a *prerequisite* to a valid transfer. Since the contract gives the Superintendent the "final say" it is clear that the transfer is to stand, as far as the contract is concerned, without regard to the nature of the causes presented to the teacher. This being so, the failure to present cause would not invalidate the transfer. It appears that the contract intends that the teacher be informed as to the causes for his transfer only so that the teacher may be guided in his future conduct by that knowledge— not as a condition of the validity of the transfer.

There are two other provisions of the contract which the appellants claim were violated, but as we read them they relate to a complete discharge or suspension from duties, which did not occur here. So, as hereinbefore stated, we find that the argument of contract violation is not sustainable.

We come now to the issue of whether the transfers in question were invalid by reason of being arbitrary, in the sense of being contrary to democratic ideals, customs and maxims; essentially unjust and unequal; exceeding the reasonable and legitimate interests of the public; not in accord with reason. See Sanitation District No. 1. of Jefferson County v. City of Louisville, 308 Ky. 368, 213 S.W.2d 995.

It is well established that a governmental administrative body may not deal in a purely arbitrary manner with the compensation or work assignment of its employes. See Saylor v. Metcalf, 310 Ky. 137, 220 S.W.2d 99; City of Frankfort v. Triplett, Ky., 365 S.W.2d 328; Freeman v. Barnes, Ky., 346 S.W.2d 729. In upholding the transfer of a teacher in Board of Education of Bath County v. Hogge, Ky., 239 S.W.2d 459, this court noted that there was no contention that the transfer was "unfair or unreasonable."

---

1. It will be observed that this provision inferentially recognizes that a change of assignment may be made at least up until July 1.

**252**

Arbitrariness thus being a ground on which invalidity of a work assignment may be declared, we address our consideration to the question of the *proof*. We shall state clearly and firmly, at the outset, that the burden of proof is, of course, on the complaining employes and a mere showing by them that the school board gave no legitimate reasons for the transfers would not be enough, in the absence of a showing of circumstances attending the transfer such as would raise an *inference* of arbitrariness. The burden is not on the board, initially, to justify the transfers; the burden of justification will shift to the board only when the complaining employes have made an affirmative showing of *nonjustification*.

In the instant case, there was some direct evidence that arbitrariness was the basis for the transfers, in the testimony of Deskins that "I felt I could not work with some of these people" and "I wanted them not to hire some of these people back." Plainly, Deskins' hoped objective was to terminate completely the employment of some of the appellants, and a reasonable interpretation of his testimony is that the treatment of the position assignments was related to that objective.

Inferences of arbitrariness were warrantable from the evidence of the bitter political conflict that preceded Farley's replacement; of the extensive number of transfers of people in top positions, who were or might reasonably be expected to have been the closest adherents of Farley's; and of the radical or extreme nature, particularly from a geographical standpoint, of some of the transfers.

Of course the strength of the inferences is to be measured in the light of the very broad discretionary authority necessarily vested in the superintendent and board of education in the administration of the schools. Their decisions as to personnel assignment are not lightly to be overruled on mere slight indications of arbitrariness. We conceive that there must be strong indication that the assignment was essentially based on arbitrary considerations.

The record indicates that the strength of the inferences may vary among the different individual appellants, since the treatment of some was much less radical than that of others.

The appellees offered little in the way of justification of the transfers but we are not prepared to say that the inferences from the appellants' evidence were so strong, concerning any of the transfers, as to *require* a finding of arbitrariness. We believe they would *authorize* such a finding. The fact finder reasonably could find arbitrariness as to some of the transfers but not as to others.

Under the circumstances it is our opinion that the case should be remanded to the trial court for a determination by that court, on the present record, of the issue of arbitrariness, as to each transfer.

On the appeal of the Kentucky Education Association the judgment is affirmed; on the appeal of the other appellants the judgment is reversed with directions for further proceedings in conformity with this opinion.

All concur.