James L. HUMMELDORF, Appellant,

v.

Ida Margaret HUMMELDORF, Appellee.

Court of Appeals of Kentucky.

May 1, 1981.

Willie Mathis, Jr., Stephen K. Dallas, Anthony W. Frohlich, Walton, for appellant.

Kurt A. Philipps, Covington, for appellee.

Before McDONALD, REYNOLDS and WINTERSHEIMER, JJ.

McDONALD, Judge:

At issue on this appeal is the constitutionality of K.R.S. 452.470, the divorce venue statute, which fixes venue in the home county of the wife. Specifically, the statute reads as follows:

An action for alimony or divorce must be brought in the county where the wife usually resides, if she has an actual residence in the state; if not, in the county of the husband's residence.

The appellant husband filed this action for divorce in Boone County where he has resided for less than six months. His wife and their children have lived in adjacent Kenton County for eighteen years. The trial court followed K.R.S. 452.470 and dismissed the husband's action for improper venue under the statute. It is the appellant's contention that the statute impermissibly discriminates against men in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Section Two of the Kentucky Constitution. Pursuant to K.R.S. 418.075, the Attorney General of Kentucky has been notified of the constitutional challenge to the statute and has elected not to participate in these proceedings.

■ First we will address the challenge under the federal Constitution. The Fourteenth Amendment protects fundamental rights and not necessarily the forum which a state designates for the litigation of those rights. If, however, a classification for venue is arbitrary and unrelated to the purposes of the statute it violates the Fourteenth Amendment. For example, a venue statute which distinguished between corporate libelers and individual libelers has been cast down on the basis of the Equal Protection Clause of the Fourteenth Amendment. *McClung v. Pulitzer Pub. Co.*, 279 Mo. 370, 214 S.W. 193 (1913). Similarly, a Kentucky venue statute which distinguished between resident and nonresident defendants was held to deny equal protection of the law. The court, in *Henry Fischer Packing Co. v. Mattox*, 90 S.W.2d 70, 262 Ky. 318, 323 (1936), stated:

> It of course rests with the state to prescribe the venue of actions brought in her courts. But the exercise of this power, as of all others, must be in keeping with the limitations which the Constitution of the United States places on state action. Procedural statutes are not excepted, but must fall like others when in conflict with those limitations.

■ The standard for review of a statutory classification based on gender was articulated in the case of *Craig v. Boren*, 429 U.S. 190, 50 L.Ed.2d 397, 97 S.Ct. 451 (1976). When a classification is gender-based courts will scrutinize both the purpose of the statute and the means by which it is to be accomplished. The classification must serve important governmental objectives and must be substantially related to the achievement of those objectives. The appellant claims that there is no legitimate state interest in requiring the husband to travel to the county of his wife's residence before he can seek a divorce nor is there an interest in giving the plaintiff wife the power to choose the forum by changing her residence. The appellee raises three governmental interests which are served by the statute.

■ The first is historical. The Kentucky divorce venue statute is virtually unchanged since 1852. It arose from the state's interest in protecting the party who faced inherent financial difficulties upon abandonment. In the past that party was almost always the wife, whose legal, social and economic position was one of powerlessness. The statute prevented the husband, who was more likely to be financially independent and generally had greater mobility, from forcing her to defend the action in a far-removed county with little interest in her welfare.

However laudable and necessary such protection was in the past, we do not think it comports with the changing status of women in our society today. Even if we were to uphold the objective of protecting an abandoned party, a gender-based distinction would not promote that objective in the situation where the wife leaves the marital residence. When that happens, she carries venue to her new residence and the abandoned husband must litigate in that forum. Under the current statute she can thus bring about precisely the situation which the appellee argues the statute was designed to prevent, i. e., the forcing of one

party to defend in a distant uninterested county.

■ Second, the appellee argues that this classification minimizes conflicts by limiting the court's inquiry on venue to a determination of the county of the wife's residence; but that to "equalize" the statute would foster a race to the courthouse. Nevertheless, because it is the wife's actual and not legal residence which is involved, *Gross v. Ward*, Ky., 386 S.W.2d 456, 457 (1965), the simple inquiry may be complicated by the need to ascertain her intent to establish an actual residence. With the requisite intent, the wife can change her residence quickly. *See Whitaker v. Bradley*, Ky., 349 S.W.2d 831 (1961) (wife lived four days in new county); *Calhoun v. Peek*, Ky., 419 S.W.2d 152 (1967) (seven days in new county); *Brumfield v. Baxter*, 307 Ky. 316, 210 S.W.2d 972 (1948) (six days in new county).

Under the current statute, our courts have already had to wrestle with a race to the courthouse; that is, the wife's race to establish residency. In *Burke v. Tartar*, Ky., 350 S.W.2d 146 (1961), the husband won the race by filing his divorce action in the morning while his wife was in transit to her new residence. She filed in the second county that afternoon, but the court held that venue was proper in the husband's suit because it had been filed before she could establish a new actual residence. Therefore, to "equalize" the statute would not create a race, it would merely change the character of the existing race.

■ Third, it is claimed that the state has an interest in limiting forum-shopping and in restricting the forum for divorce to one with a substantial connection to the parties and their property. Assuming that these are important governmental objectives, this statute still is not substantially related to them. A more narrowly drawn version providing for venue in the county of the parties' last residence prior to separation would serve that purpose without resort to the unrelated factor of gender.

■ In 1972 our legislature saw fit to revise the substantive law of marriage and divorce to make it uniform as applied to men and women. Accordingly, the procedure provided should neither favor nor disfavor either party. We see no reason for continuing to give a resident wife the home court advantage in divorce actions. Paternalistic legislation without a substantial relationship to an important objective cannot withstand an equal protection challenge. *Craig v. Boren, supra*. The arguable administrative convenience of the current system will not save it. *Johnston v. Hodges*, 372 F.Supp. 1015 (E.D.Ky.1974).

■ The statute also violates Section Two of the Kentucky Constitution which protects citizens from the arbitrary exercise of power over life, liberty, or property by the Commonwealth. In interpreting Section Two, the Kentucky Supreme Court has held that, "Whatever is essentially unjust and unequal or exceeds the reasonable and legitimate interest of the people is arbitrary." *Sanitation District Number One v. City of Louisville*, 308 Ky. 368, 213 S.W.2d 995 (1948). *See* also, *Rudolph v. Rudolph*, Ky.App., 556 S.W.2d 152 (1977). The treatment of litigants under the statute is patently unequal and, we think, unjust. The sex-based distinction which limits the venue of a divorce action to the resident wife's home county is arbitrary and therefore unconstitutional under the Kentucky Constitution. Under this decision, an action for dissolution may be brought in the county where either party usually resides. Should the legislature determine that the venue should be related to parties' last marital residence or any other factor, it may so provide.

It could be argued that until the legislature acts, any circuit court could hear any divorce case once the prerequisites of K.R.S. 403.140 concerning residence, conciliation provisions, and a finding of irretrievable breakdown were satisfied. However, it does not appear to us that in this interim, the circuit courts are left without direction in deciding the proper forum for a divorce action. As a practical matter the jurisdictional restraints on the court's ability to handle the related matters of child custody,

child support, maintenance and property settlements will tend to limit litigants to filing in an interested forum.

■ In addition, our Supreme Court has provided circuit courts with guidance in deciding when to accept jurisdiction. In *Shumaker v. Paxton*, 613 S.W.2d 130, 28 Ky.L. Summ. 3 (March 10, 1981), Justice Aker wrote for a unanimous court and endorsed a common-sense approach to the problem of litigating in an unrelated county. In *Shumaker*, the parties disputed the proper forum for modification of an existing child custody decree. The two courts involved were the circuit court which granted the original decree and the circuit court of the county where the parties had subsequently moved and lived at the time the modification was sought. The *Shumaker* decision approved the assumption of jurisdiction by the latter court. The following factors were considered there and would be relevant in cases like the one on appeal: (1) the county of the parties' marital residence prior to separation; (2) the usual residence of the children, if any; (3) accessibility of witnesses and the economy of offering proof.

Conversely, it is also within the discretion of a circuit court to decline jurisdiction when it is appropriate under the doctrine of *forum non conveniens*. *Williams v. Williams*, Ky.App., 611 S.W.2d 807 (1981). Such a determination will not be reversed absent an abuse of that discretion. *Id.* Under the authority of these two cases, a circuit court can proceed when it is the most convenient forum, and when necessary can thwart the efforts of a party to establish an unrealistic or burdensome forum. We think the factors stated above will guide the circuit courts in their discretion to ensure the fair and reasonable selection of forum for divorce cases until the legislature has expressed its intent.

The judgment of the trial court is reversed, with directions to the Boone Circuit Court to allow the appellant to proceed on his original petition, or reject jurisdiction after consideration of the case law and factors outlined in this opinion.

REYNOLDS, J., concurs.

WINTERSHEIMER, J., dissents.

WINTERSHEIMER, Judge, dissenting.

I must respectfully dissent because I believe the existing venue statute is not arbitrary and serves a useful and legitimate governmental purpose, and is substantially related to the realization of these legislative objectives. It is not unconstitutional.

The current law recognizes the continued inherent economic problems faced by a wife in the employment market. A wife and mother who has selflessly committed herself to the making of the home with the primary responsibility of child care is frequently unprepared to earn a decent living in today's society. The ideal of nominal equality must be tested against the world of reality. Pious words will not protect an abandoned wife with minor children.

The existing venue statute acknowledges the financial hardship and immediate adjustment that occurs when a dissolution of marriage is filed. Here the wife is left with the care of four minor children, the product of an 18 year marriage. It appears that she is not trained to compete in the job market.

Divorce law is a creature of statute. It has no historical basis in either law or equity. This statute is quite clear in providing the venue of the suit as the wife's residence. There is nothing peculiarly arbitrary about such a provision. Generally, a civil suit is filed in the locality of the defendant. Here service was obtained in Kenton County.

In the interests of judicial economy, an innovative step might have been considered by the trial judge by simply transferring this action to the circuit court having territorial jurisdiction over the residence of the wife. The 1976 Judicial Amendment to the Constitution provides for a Circuit Court without any specific reference to geographical areas.

It appears to me that this is an inappropriate case in which to decide the constitutionality of the venue statute.

There is no real inconvenience for either party because of the urban-suburban character of Boone and Kenton Counties which adjoin. However, there is a distinct and manifest unfairness in requiring the wife to defend a divorce proceeding when she had a right to expect stability in the law. Here the husband was well aware of the long-standing Kentucky venue requirements. The trial court courageously recognized and upheld the law. Now a majority of this panel wishes to undo it. The wife is faced with surrendering her reliance on the existing law and engaging in a further expensive appeal.

No suitable reason can be found to overturn the decision of the Boone Circuit Court. If that decision is measured by analogizing it to a clearly erroneous standard, how can it be said that the trial judge committed reversible error in upholding the existing law. It has been held in Kentucky, in *Commonwealth v. Burke*, Ky., 481 S.W.2d 52 (1972), that gender-based classification must stand the test of rational connection and fair and substantial relation to the objective of the statute.

In *Caban v. Mohammad*, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979), the United States Supreme Court found that a gender-based classification which serves an important governmental objective is constitutional. In *Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 773 (1979), the Supreme Court added the test that the classification must be substantially related to the achievement of these governmental objectives.

The present statute meets these tests because there is a definite public purpose in localizing a divorce contest. Most of the significant marital contacts can be found in connection with the residence of the wife. The children reside with the wife and a substantial percentage of the marital property is in the county of her residence. The problems of subsequent enforcement of the court's order as to custody, visitation, division of the marital property and any number of other routine dissolution questions are best answered in the county in which the marriage is localized.

Resolution of the venue question in the manner proposed by this opinion would encourage forum shopping or a race to the court house. Statewide application of the rule announced here allows either party to move the action from the county in which the marital property is located and where the children reside to any other county upon fulfilling a minimum residency requirement.

The concept of equality is fragile and intangible. It is not truly served by this decision. Equality should be measured by the results achieved. Here the wife is stripped of her right to rely on the law and must defend this action in a foreign, although adjoining, county.

The Kentucky Legislature in 1972, when it last considered substantive revisions in the divorce laws, left the venue provisions unchanged. Although there have been great advances in the overall position of women in our society, it is naive to think that total equality between the sexes has been achieved. It is not paternalism for application of the law to result in a balance between divorce contestants.

Here it is the duty of the intermediate appellate court to support the existing law and not to indulge in judicial legislation. Domestic relations is one of the most active fields of litigation. This decision only adds to the problems faced by the 91 circuit judges in this Commonwealth. The next session of the Kentucky Legislature is not scheduled for at least one year. In that interim great injustice could result from the decision rendered here.

This Court has no way of determining the factual questions relating to who is better served by the existing law. A committee of the legislature could conduct hearings and arrive at a rational and legitimate basis for changing the venue law if that is thought necessary.

Accordingly, I believe that K.R.S. 452.470 serves important governmental objectives, and is substantially and rationally related to the achievement of these legislative objectives. Therefore, it is constitutional.