**BOARD OF EDUCATION OF ASHLAND, Kentucky, and Curt Foutch, Individually and in his Official Capacity as Superintendent of the Ashland Independent School District, Movants,**

v.

**Elizabeth JAYNE and Virginia Jayne, Respondents.**

No. 89–SC–405–DG.

Supreme Court of Kentucky.

May 9, 1991.

Rehearing Denied Aug. 29, 1991.

F.C. Bryan, John C. Fogle, Bryan, Fogle & Chenoweth, Mt. Sterling, Carl D. Ed-

wards, VanAntwerp, Monge, Jones & Edwards, Ashland, for movants.

Jennifer B. Coffman, Brooks, Coffman & Fitzpatrick, Lexington, for respondents.

STEPHENS, Chief Justice.

The principal issue on this appeal concerns the action of a local school superintendent and school board in transferring two teachers from one position to another in the same system, and whether such transfer constitutes a violation of Section 2 of the Kentucky Constitution.

The Court of Appeals answered the question in the affirmative. We disagree, and reverse.

The respondents, who are sisters, have been teachers in the Ashland Independent School System for over thirty years. For most of this time they taught at Paul Blazer High School, the only high school in the system. Beginning in 1983–84, movant Foutch, the superintendent, began receiving computer printouts which, inter alia, showed the student pass/failure rate of various teachers. The first student failure rate report showed 22% for respondent Elizabeth Jayne and 40% for respondent Virginia Jayne. After receiving the printout and noting a problem with respondents' student failure rate, Foutch met with Elizabeth and Virginia in order to identify the problem and suggest ways to correct it.

The high failure rate of respondents' students continued through 1986. For the first nine week period the failure rate for Elizabeth was 28% and 29% for Virginia. For the second nine week period, 44% of Elizabeth's students failed and 61% of Virginia's students failed. In the spring of 1986, superintendent Foutch recommended that respondents be transferred to other schools in the same system. Such transfers did not result in any reduction in pay nor fringe benefits to respondents. The transfers were effective in June of 1986.

In October of 1986, respondents filed a suit in the Boyd Circuit Court primarily alleging that the transfers were arbitrary and, as such, were in violation of Section 2 of the Kentucky Constitution. At trial, respondents alleged that Foutch had trans-

ferred them in an act of retaliation since Virginia had assigned a failing grade to the high school principal's son. The principal's son also failed a mathematics course taught by Elizabeth. Foutch denied this was the reason for the transfers, and maintained that the real reason for the transfers was that respondents had not made any improvement in their student failure rates in spite of his suggestion to correct the problem. Respondents' new positions did not require them to grade their students.

In spite of the movants' objections, the trial court submitted to the jury the question of whether a constitutional violation had occurred. The jury found that the transfer was arbitrary, and thus in violation of Section 2 of the Kentucky Constitution. The trial court directed that movants reinstate respondents to their former positions.

On December 29, 1988, the Court of Appeals by an unanimous opinion, reversed the trial court. The court ruled as a matter of law that the new assignments were not "essentially based on arbitrary considerations." On May 12, 1989, in response to a petition for rehearing filed by respondents, the Court of Appeals withdrew its original opinion, and by a 2–1 vote, affirmed the decision of the trial court. The Court of Appeals determined that the jury properly decided the issue of whether there was a constitutional violation, and concluded that there was sufficient evidence before the jury to support their findings of fact. We then granted discretionary review.

Movants argue: (1) that their action in transferring respondents was within their discretion as a matter of law; (2) that Section 2 of the Kentucky Constitution does not apply to administrative bodies' discretionary decisions, and (3) that the jury was not the proper entity to determine if a constitutional violation occurred.

We believe, as a matter of law that no violations of respondents' rights under Section 2 of the Kentucky Constitution occurred. Section 2 states that, "[a]bsolute and arbitrary power over the lives, liberty

and property of free men exists nowhere in a republic, not even in the largest majority."

■ We reiterated and summarized the purpose and scope of this section of our Constitution in the case of *Ky. Milk Marketing v. Kroger Co.*, Ky., 691 S.W.2d 893 (1985).

Section 2 is a curb on the legislature as well as on any other public body or public officer in the assertion or attempted exercise of political power. *Sanitation Dist. No. 1 v. City of Louisville*, 308 Ky. 368, 213 S.W.2d 995 (1948). Whatever is contrary to democratic ideals, customs and maxims is arbitrary. Likewise, whatever is essentially unjust and unequal or exceeds the reasonable and legitimate interests of the people is arbitrary, *Id.* No board or officer vested with governmental authority may exercise it arbitrarily. If the action taken rests upon reasons so unsubstantial or the consequences are so unjust as to work a hardship, judicial power may be interposed to protect the rights of persons adversely affected. *Wells v. Board of Education of Mercer County*, Ky., 289 S.W.2d 492, 494 (1956). Our function is to decide a test of regularity and legality of a board's action by statutory law and by the constitutional protection against the exercise of arbitrary official power. *Id.*

Section 2 is broad enough to embrace the traditional concepts of both due process of law and equal protection of the law. *Pritchett v. Marshall*, Ky., 375 S.W.2d 253, 258 (1963). Unequal enforcement of the law, if it rises to the level of conscious violation of the principle of uniformity, is prohibited by this Section. *City of Ashland v. Heck's Inc.*, Ky., 407 S.W.2d 421 (1966); *Standard Oil v. Boone County Bd. of Sup'rs*, Ky., 562 S.W.2d 83 (1978). The question of reasonableness is one of degree and must be based on the facts of a particular case. *Boyle Cty. Stockyards Co. v. Commonwealth, etc.*, Ky.App., 570 S.W.2d 650 (1978).

It is clear from the language of this section and from the authority cited that the prohibition against arbitrary action applies to all public bodies and all public officials, e.g., school boards and school superintendents, in their assertion or attempted exercise of political power.

■ The real issue here is not whether Section 2 is applicable to movants, but rather whether a constitutional violation actually occurred. Both parties cite the case of *Bowlin v. Thomas*, Ky.App., 548 S.W.2d 515 (1977), as authority for their position. In that case, Bowlin, a non-tenured teacher, employed under a limited contract, sued a city board of education, its individual members and the superintendent, alleging that the defendants' failure to renew his contract was arbitrary, in violation of Sec. 2 of the Kentucky Constitution. The Court of Appeals in *Bowlin* declined to apply Sec. 2 stating,

> "In this case, the school board made the decision not to re-employ Bowlin.... So long as it is not based upon a constitutionally impermissible reason, a decision to terminate the employment of a public officer or employee does not raise an issue under section two of the Ky. Constitution. See *Johnson v. Laffoon*, 257 Ky. 156, 77 S.W.2d 345 (1935)."

*Bowlin, supra* at 519. Although *Bowlin* involves the failure of school officials to *re-employ a teacher*, thus factually distinguishing it from the case at bar, we believe that the test set out in *Bowlin* is nevertheless applicable to this case. Was the movant's action of transferring respondents to other jobs in the same school system, based on a "constitutionally impermissible reason?" A majority of this Court thinks that movants' decision was not in violation of the Kentucky Constitution.

KRS 161.760 sets out some of the respective duties and rights of school boards and teachers. Sec. (4) states:

> *"Employment of a teacher, under either a limited or a continuing contract, is employment in the school district only and not in a particular position or school."* (emphasis added).

By the enactment of this statute the General Assembly of Kentucky has clearly established that a teacher who has a contract to teach, has no absolute right to a particular teaching job in a particular school. The legislature has clearly given discretion to school boards to transfer teachers within their district. As we have indicated, under *Bowlin,* Section 2 of the Kentucky Constitution is a potential curb on this power.

However, under the facts of this case, no constitutionally improper reason was presented to invoke the provisions of Sec. 2. No injury occurred to respondents. They suffered no loss of pay, and no loss of fringe benefits. No damage to respondents was shown. Moreover, there is no evidence indicating that the decision of the superintendent and the school board was based on racial discrimination, gender discrimination, religious discrimination, or political activity discrimination.[1]

Even though a jury found evidence of constitutional arbitrariness, we believe that there was no evidence in this case as would justify such a verdict. Clearly, the evidence presented was not elevated to the magnitude of a "constitutionally impermissible reason."

█ We further hold that a jury is not the proper vehicle or forum to determine whether a constitutional provision has been violated. Although *Snapp v. Deskins,* Ky., 450 S.W.2d 246 (1970), has been cited to support submission of a constitutional question to a jury, we find otherwise. In *Snapp,* nine school board employees were transferred to different positions by the Pike County Board of Education. The School Board employees alleged that the transfer was arbitrary and capricious, in violation of statutory provisions and a breach of contract. The trial court decided that there were no statutory violations, but declined to decide the issue of arbitrariness. We reversed and remanded with directions to the trial court to determine whether the transfer was arbitrary.

Nowhere in the Opinion is there a reference to Section 2 of the Kentucky Constitution. The Court only went so far as to reiterate that "a governmental administrative body may not deal in a purely arbitrary manner with the compensation or work assignment of its employees." *Snapp, supra,* at 251. *Snapp* does not stand for the proposition that a constitutional issue may be submitted to the trier of fact. The issue of constitutionality is a *legal* one, and should only be decided by a Court.

The decision of the Court of Appeals is reversed and this case is remanded to the trial court with directions to enter a judgment consistent with this Opinion.

LAMBERT, REYNOLDS, and SPAIN, JJ., concur.

LEIBSON, J., concurs in results only by separate opinion.

WINTERSHEIMER, J., files a dissenting opinion in which COMBS, J., joins.

LEIBSON, Justice, concurring.

I concur in results only.

Respectfully, I disagree that deciding a constitutional issue is purely a judge function. If sufficient evidence exists to raise a constitutional question, but the evidence is in conflict, a jury should decide fact questions under appropriate instructions.

However, here the evidence was insufficient to rise to the level of proving constitutionally impermissible arbitrariness against the Board and Superintendent of schools.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because Section 2 of the Kentucky Constitution states:

Absolute and arbitrary power over the lives, liberty and property of free men exists nowhere in a Republic, not even in the largest majority.

Restriction of arbitrary power is at the heart of our constitutional freedoms. The

---

1. Age discrimination was originally alleged, but was summarily dismissed by the trial court and this issue was not appealed.

accountability of all who have power is the core of our Constitution. This case is about the practical legal application of the constitutional prohibition against arbitrary power. *Kentucky Milk Marketing v. Kroger Co.*, Ky., 691 S.W.2d 893 (1985), provides guidance as to how Section 2 is to be applied and interpreted. *Kentucky Milk Marketing, supra,* is cited by almost every opinion written in this case as well as in all the legal briefs. Stripped of the ponderous citations, that case simply states that Section 2 is a curb on the legislature as well as any other public body or public officer in the assertion or attempted assertion of political power ... whatever is contrary to democratic ideals, customs and maxims is arbitrary ... whatever is essentially unjust and unequal or exceeds the reasonable and legitimate interests of the people is arbitrary. No board or officer vested with governmental authority may exercise it arbitrarily. If the action taken rests upon reason so substantial or the consequences are so unjust as to work a hardship, judicial power may be interposed to protect the rights of persons adversely affected ... the function of the reviewing court is to decide a test of regularity and legality of a board's action by statute and by the constitutional protection against the exercise of arbitrary power.

It is worth considering at this point that such an interpretation has already been made in the initial appeal of this case by the Court of Appeals. The function of this Court is to review the decision of the Court of Appeals and to determine in what respect, if any, it is in error. I find that the Court of Appeals is exactly correct in its interpretation of arbitrary conduct in regard to the facts of this case. The issue of constitutionality may be a legal one, but the finding of fact and the application of the legal principles to the facts is one that must be made by a jury in a free society under the mandate of Section 7 of the Kentucky Constitution. This is particularly true in a situation in which arbitrary conduct is the central issue. This matter involves a vigorously disputed set of facts.

Interpretation of constitutional questions has a peculiar need for judicial input. However the findings of fact which lead to the presentation and resolution of constitutional questions can be properly found by a jury. The option to have a jury of peers find facts is an ancient and sacred right.

Here the jury found sufficient evidence; the trial judge did not set aside the verdict as being contrary to the weight of evidence and the Court of Appeals agreed with the jury and the trial judge. Now the majority of this Court frames the issue as one of "constitutional dimension" and states the evidence presented at trial was insufficient. I do not agree.

K.R.S. 161.760(4) provides that the employment of a teacher is employment in the school district only and not in a particular position or school. The statute also authorizes the transfer of a teacher for the school year if it is accomplished prior to July 15. No reasons or explanations are required. In this case, the action of the board was not prohibited by statute. Therefore it must be measured against the constitution.

*Bowlin v. Thomas*, Ky.App., 548 S.W.2d 515 (1977) holds that so long as it is not based on a constitutionally impermissible reason, a decision to terminate the employment of a public officer or employee does not rise to an issue under Section 2 of the Kentucky Constitution. Here the school board argues that this reasoning applies to transfers and that absent a constitutionally impermissible reason a decision to transfer a teacher would not violate Section 2 of the constitution. There is no evidence that the transfers were based on age, sex, religion, race, place of birth, or political free speech. However, in every situation where arbitrariness is an issue, some other constitutional violation is not necessary before Section 2 is offended. *Kentucky Milk Marketing, supra; Wells v. Board of Education of Mercer County*, Ky., 289 S.W.2d 492 (1956).

*Wells, supra,* held that under applicable statutes, the board had the authority to close the school when necessary. The court stated that broad discretion of the board is limited by arbitrariness but did not

mention that another constitutional violation was necessary before arbitrariness could be found. *Kentucky Milk Marketing* reasoned that the statute involving minimum pricing for milk was in violation of Section 2 because it was an arbitrary interference with the free flow of commerce. Nothing was said which indicated that the law violated some other constitutional section.

Therefore, it appears that the violation of another constitutional provision is not a requirement for finding arbitrariness pursuant to Section 2.

The instructions given in this case were adequate, and they did not allow the jury to determine its own law or to substitute its judgment for that of the Board of Education. The instructions were taken generally from the discussion of arbitrariness in *Kentucky Milk Marketing* and *Sanitation District No. 1 v. Louisville*, 308 Ky. 368, 213 S.W.2d 995 (1948).

The instructions had a definition of arbitrariness in the same terms that were used in the previous case law. The instructions adequately set out the basis for the jury to determine whether the Board of Education had acted arbitrarily. If the transfers were not based on substantial and legitimate reasons connected with the proper functioning of the school system, or the consequences were so unjust as to work a hardship, they were arbitrary. On the other hand if the transfers were honestly based on substantial and legitimate reasons, and the consequences were not so unjust as to work a hardship, then they were not arbitrary. The choice was very simple for the jury. Although the term "arbitrariness" in a constitutional sense does not lend itself to a simple definition, here the jury was adequately instructed. *Snapp v. Deskins*, Ky., 450 S.W.2d 246 (1970) provides that the question of arbitrariness is one for the *finder of fact* (Emphasis added). If a jury verdict is supported by substantial and competent evidence, this Court should not substitute its judgment for that of the jury. *Rogers v. Kasdan*, Ky., 612 S.W.2d 133 (1981). Here there was sufficient evidence on which the jury could base its finding that the Board of Education acted arbitrarily.

The majority mislabels the issue as one of constitutionality rather than a fact finding of arbitrariness. Obviously, technical legal questions should be decided by a court and not a jury. However, that is not the question here. What needs to be decided is the factual question of arbitrariness and the jury is a proper vehicle for a factual determination.

A review of the testimony presented at trial is useful in determining the factual setting of this case. The Jaynes testified that they were given no reason for their transfer. Their testimony indicated that the transfers may have been a result of a retaliation by the high school principal, Glenn Riedel. The record shows that in the Spring of 1984, the principal's son received a failing grade in Virginia's English class, and that she and Riedel had an angry confrontation over the grade. The following year, Virginia's schedule was changed so that the number of upper level classes she was teaching was reduced to one. In the 1984–85 year, Principal Riedel's son did not pass a mathematics class taught by Elizabeth. Again Riedel and Elizabeth also had a hostile confrontation about the grade. The schedules of the Jaynes were changed by Principal Riedel for the 1985–86 school year so that neither taught any upper level class.

The Jaynes stated that they generally gave more failing grades in lower level classes than upper level ones. They testified that they had never received complaints about marks received by the students in their classes until the fall of 1985. The teaching sisters also indicated that Superintendent Foutch did not give them any suggestions on how to improve their failure rates nor were they given any warnings that further high failure rates could result in transfer. Both of the Jaynes had always received good evaluations on their teaching and classroom management. The sisters testified that they had no experience or training to teach in the remedial classes required by their transfers. Elizabeth had never taught class below the Ninth Grade

and was not certified to teach elementary grades. Virginia had not taught elementary school in over 30 years.

Superintendent Foutch testified that he was concerned with high failure rates because failures can seriously interfere with a student's schedule due to having to take the class again. In addition, he stated a failure in a class can disrupt the planned time of graduation. The new positions given the Jaynes did not require grades. Foutch stated that the decision to transfer the Jayne sisters was his, but he admitted that Principal Riedel had requested their transfer on several occasions. The Superintendent denied that the real reason for the transfer was to induce the Jayne sisters to retire. None of the other five teachers were transferred, Superintendent Foutch testified, because they had made progress in reducing their failure rates. There is an ominous odor to the administrative philosophy which admits that the other teachers were not transferred because they had made undefined "progress" in reducing failures. Legitimate questions can arise as to the transfer which places Elizabeth Jayne in a position for which she was not certified. Clearly progress and a transfer to a decertified position are subjective determinations capable of being interpreted as being arbitrary.

Unchecked authority over working conditions have been classic grounds for the spawning of arbitrary behavior. Every working person is entitled to fair treatment relating to working conditions. Any compromise of the foundation of this safeguard arising from Section 2 of the Kentucky Constitution, could have the potential of putting many unorganized professional employees in a very grave situation.

The majority opinion has not identified in any detail in what respect the review by the Court of Appeals was in error; it has merely substituted its decision for that of the initial reviewing panel and indicated insufficiency of evidence at the jury trial.

The decision of the jury should be affirmed because it is supported by substantial evidence. The standard of review is to determine whether substantial and competent evidence exists to support the verdict. *Rogers v. Kasdan, supra.* This record contains ample evidence to support the verdict of the jury. Essentially the facts indicate that Virginia and Elizabeth Jayne taught in the high school for over thirty years until their transfers. Virginia taught English and Elizabeth taught Mathematics and Chemistry. Over the years both sisters have had consistently good evaluations and both have had high failure rates. In 1984, the son of the high school principal received failing grades from both Virginia and Elizabeth, precipitating a hostile confrontation with the principal. The following school year the principal altered both teachers' schedules so as not to assign them to any advanced level courses. Elizabeth was assigned outside her field to an area she was not certified to teach. The Superintendent threatened to send Virginia to a day treatment care for truants and behaviorally disturbed students, and he also encouraged the sisters to consider retirement as an alternative to the transfers. Under the circumstances and the total record, it was reasonable for the jury to infer that arbitrary conduct had been the reason for the punitive transfer of the teaching sisters. Clearly there was substantial and sufficient evidence upon which the jury could base such a finding.

Now we are left with very little to support the Kentucky Constitution that "Absolute and arbitrary power—exists nowhere in a republic—not even in the largest majority."

The reviewing panel of the Court of Appeals has tested the regularity and legality of the action of the Board of Education against the standard of the constitutionally protected exercise of arbitrary official power and found the Board of Education wanting and the jury's determination correct.

We should be reminded of the standards announced in *Wells:*

No board or officer vested with governmental authority may exercise it arbitrarily. If the action taken rests upon reason so unsubstantial or the consequences are so unjust as to work a hardship, judicial power may be interposed to

protect the rights of persons adversely affected.

Clearly the majority has departed from that standard. It has established a new and weakened standard for the review of arbitrary under Section 2 of the Kentucky Constitution.

The legitimate concern of a reasonable school board that malcontents will insist that juries become "ad hoc school boards" and encourage teachers with meritless claims to challenge every administrative decision in court is an overreaction. Here there is considerable evidence that the teachers were treated unjustly and no legitimate reasons for the transfers were given. The question of arbitrariness is one of fact which is particularly suited to jury resolution. The burden of proof to demonstrate arbitrariness remains on the employee and the board's discretionary authority is intact when it legitimately exercises its sound professional judgment. The burden of justification shifts to the board only when the complaining employee makes an affirmative showing of nonjustification.

One of the keys to serious education reform is that the integrity of individual classroom decision on the fundamental question of pass or fail shall be totally free of any arbitrary power.

I would affirm the decision of the Court of Appeals and the jury verdict which ordered the teachers reinstated to their former positions.

COMBS, J., joins in this dissent.